THE STATE OF OHIO, APPELLEE, *v.* MITTS, APPELLANT.

[Cite as *State v. Mitts* (1998), 81 Ohio St.3d 223.]

(No. 97–268—Submitted December 2, 1997—Decided March 11, 1998.)

226

*Stephanie Tubbs Jones,* Cuyahoga County Prosecuting Attorney, and *David Zimmerman,* Assistant Prosecuting Attorney, for appellee.

*David L. Doughten* and *John P. Parker,* for appellant.

COOK, J. In this appeal, Mitts advances eleven propositions of law. Finding none meritorious, we affirm his convictions. In accordance with the mandate of R.C. 2929.05(A), we have considered each of Mitts's propositions of law and have reviewed the sentence for appropriateness and proportionality.

We have previously held that R.C. 2929.05 does not require this court to address and discuss, in opinion form, each proposition of law raised in a capital case. See, *e.g., State v. Keith* (1997), 79 Ohio St.3d 514, 517, 684 N.E.2d 47, 54; *State v. Allen* (1995), 73 Ohio St.3d 626, 628, 653 N.E.2d 675, 680. Accordingly, we reject the eleventh proposition of law, a familiar attack on the constitutionality of Ohio's death-penalty statutes, for reasons we have often stated before. We address the remainder of the propositions of law below and for the reasons that follow we affirm the judgment of the court of appeals.

## I

## The Guilt Phase

In his second proposition of law, Mitts argues that the trial court erred in not allowing Dr. Sonya McKee, a psychiatrist, to answer a hypothetical question during her guilt-phase testimony.

At trial, the defense called Dr. McKee, who testified that she had examined Mitts and found him competent, not suffering from any mental disease or defect, and responsible for his acts. Dr. McKee did think that Mitts was intoxicated on the day of the offenses and suffering from impaired memory as a result, and she answered various hypothetical questions on those points. But the court sustained the state's objection to a question concerning a hypothetical man, "B," who hated "black people [and] police officers," then got drunk, and shot a black man and a police officer. This question contrasted "B" with a hypothetical person, "A," presumably Mitts, who did not dislike blacks or police officers.

Initially, we note that Mitts did not preserve this issue for review by proffering the substance of the excluded testimony. See Evid.R. 103(A)(2); *State v. Gilmore* (1986), 28 Ohio St.3d 190, 28 OBR 278, 503 N.E.2d 147, syllabus. Even if it was properly preserved, we would find no abuse of discretion in the exclusion of this evidence. See *State v. Williams* (1996), 74 Ohio St.3d 569, 576, 660 N.E.2d 724, 732, citing *State v. Williams* (1983), 4 Ohio St.3d 53, 4 OBR 144, 446 N.E.2d 444, syllabus. Under Evid.R. 403(A), the trial court must exclude evidence "if its probative value is substantially outweighed by the danger of * * * confusion of the issues, or misleading the jury." Defense counsel's attempt to secure Dr. McKee's opinion contrasting two hypothetical persons was misleading and confusing.

Moreover, the trial court could have excluded the testimony because, except in the mitigation phase, "a defendant may not offer expert psychiatric testimony, unrelated to the insanity defense, to show that, due to mental illness, intoxication, or any other reason, he lacked the mental capacity to form the specific mental state required for a particular crime or degree of crime." *State v. Cooey* (1989), 46 Ohio St.3d 20, 26, 544 N.E.2d 895, 906; accord *State v. Wilcox* (1982), 70 Ohio St.2d 182, 194, 24 O.O.3d 284, 291, 436 N.E.2d 523, 530; *State v. Slagle* (1992), 65 Ohio St.3d 597, 607, 605 N.E.2d 916, 927; *State v. Huertas* (1990), 51 Ohio St.3d 22, 27, 553 N.E.2d 1058, 1065 (rejecting expert witnesses as to the effect of intoxication). Thus, we reject Mitts's second proposition of law.

By his fourth proposition of law, Mitts challenges the trial court's refusal to instruct the jury on voluntary intoxication when "a reasonable jury could find that the defendant could not form the requisite intent due to * * * inebriation."

As we recognized in *State v. Fox* (1981), 68 Ohio St.2d 53, 54–55, 22 O.O.3d 259, 260, 428 N.E.2d 410, 411, "[t]he common law and statutory rule in American jurisprudence is that voluntary intoxication is not a defense to any crime." Nonetheless, "where specific intent is a necessary element, * * * if the intoxication was such as to preclude the formation of such intent, the fact of intoxication may be shown to negative this element." *Fox*, 68 Ohio St.2d at 55, 22 O.O.3d at 260, 428 N.E.2d at 411–412.

In denying the defense request for an instruction on intoxication, the trial court relied on *State v. Hicks* (1989), 43 Ohio St.3d 72, 538 N.E.2d 1030. In *Hicks*, the trial court did not instruct on voluntary intoxication despite evidence of intoxication. On appeal Hicks claimed that he was so intoxicated, through cocaine, that he could not form the specific intent to kill. The *Hicks* court recognized that "[t]he issue of intoxication is not raised as a defense to the element of purpose * * * merely because the evidence suggests reduced inhibitions, impaired judgment or blurred appreciation by the defendant of the consequences of his conduct." *Id.* at syllabus.

It is within the sound discretion of the trial court to determine whether the evidence is sufficient to require a jury instruction on intoxication. *State v. Wolons* (1989), 44 Ohio St.3d 64, 541 N.E.2d 443, paragraph two of the syllabus; *State v. Fox*, 68 Ohio St.2d 53, 22 O.O.3d 259, 428 N.E.2d 410. Evidence of intoxication is sufficient to raise the intoxication defense only where, if believed, it would support acquittal. *State v. Hicks*, 43 Ohio St.3d at 75, 538 N.E.2d at 1034.

Here, there was evidence that Mitts was intoxicated during the police standoff, but the jury still could not have reasonably found that he lacked the capacity to form a specific intent to kill at the time of the murders. Testimony from witnesses who observed Mitts before or during the shootings does not support a finding that Mitts was so intoxicated that he did not intend what he was doing when he shot the victims. Around 8:00 p.m., when Timothy Rhone encountered Mitts in the hallway, Mitts displayed no signs of intoxication. Mitts held the gun "[p]erfectly steady" when he aimed it at Rhone's head. After 8:00 p.m., when Griffin saw Mitts walk up, aim, and shoot Bryant, Mitts was not staggering. Daniel O'Brien saw Mitts just after he killed Bryant and when Mitts shot at the first responding police car. O'Brien testified that Mitts was not staggering as he walked around, and he had no trouble ejecting the clip from his weapon, reloading, and firing several times at a police car.

Between 8:30 and 9:00 p.m., after Mitts shot Lt. Kaiser and Sgt. Glivar, Lt. Kaiser tried to negotiate with Mitts for twenty or thirty minutes. Mitts threatened to kill Bryant's girlfriend, Griffin, as well as the entire police department. By refusing to surrender and demanding that the police come to his apartment and kill him, Mitts demonstrated that he was acting purposefully and

knew what he had done and what he was doing. At that time, Mitts said he had been drinking, but he did not say how much and his speech was not slurred.

Officer Mackey, who talked with Mitts even later, also noted that Mitts said he had been drinking, but Mitts was "calm" and "never angry," and his speech pattern did not indicate intoxication. Further, Mitts read the label on Glivar's shotgun and fired it twice, although he was unfamiliar with that weapon. Sgt. Robert Sackett, who joined in Mitts's lengthy conversations with Officer Mackey, thought Mitts seemed "completely sober."

Chief Salerno, who first talked with Mitts around 8:30 p.m. during the police standoff, testified that Mitts would "giggle and laugh" at times, and at other times would "start getting angry." Mitts told Salerno that he had finished drinking a bottle of bourbon and was now drinking scotch. Salerno thought Mitts was drunk, but Mitts told him exactly what he had done, i.e., killed a black man and shot two police officers. Detective Ronald Arco also thought Mitts was intoxicated when he overheard Mitts on the telephone around 9:42 p.m.

Police Sergeant Gary Wolske, who stayed with Mitts after he was arrested around 2:00 a.m., described him as quiet, neither combative nor confused, and apparently sober. A nurse who first treated Mitts testified that he displayed no signs of intoxication. A Life Flight nurse, who saw Mitts later, thought he had been drinking, but his speech was not impaired. Mitts indicated that he knew what he had done because he told the nurse, "I'm a cop killer and you might as well kill me now." Mitts also said, "I think I killed a nigger."

Mitts's strongest evidence of intoxication is his blood-alcohol level of .21 grams per one hundred milliliters taken at 3:43 a.m. Although the blood-alcohol level is evidence that Mitts was intoxicated at the time of the blood test, more than six hours after the shootings, it does not compel an intoxication instruction because the jury could not have inferred from it that the intoxication precluded Mitts from forming the intent to purposefully commit the murders.

The evidence of intoxication could not have supported a verdict of acquittal. The trial court was correct in determining that an intoxication instruction was not required. Accordingly, we reject the fourth proposition of law.

## II

### Penalty Phase

#### A

#### Instruction on Nature of Life Sentences

In his first proposition of law, Mitts argues that the trial court should have instructed the jury that it could recommend that Mitts receive consecutive life sentences on the two counts of aggravated murder. The trial judge denied

Mitts's request for such an instruction. The court did not err by refusing to give Mitts's requested instruction because it is not an accurate statement of the law. See *State v. Scott* (1986), 26 Ohio St.3d 92, 101, 26 OBR 79, 87, 497 N.E.2d 55, 63. Under Ohio law, "[a] jury has no option of recommending whether life sentences should run consecutively or concurrently." *State v. Allard* (1996), 75 Ohio St.3d 482, 492, 663 N.E.2d 1277, 1287, citing *State v. Grant* (1993), 67 Ohio St.3d 465, 482, 620 N.E.2d 50, 69; see, also, R.C. 2929.03(D)(2).

Mitts next argues that the trial court's failure/refusal to tell the jury, in response to a question, that he could or would require that life sentences, if recommended, be served consecutively violated Mitts's rights under the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution. During penalty deliberations, the jury asked the judge, "Would a verdict of life imprisonment on count one and count two be served consecutively or concurrently?" The court answered that these aggravated murder counts "are separate and distinct counts. * * * [T]he matter or the question as to consecutive or concurrent sentencing is up to the Court * * *." Mitts contends that "[t]he jury question implies that the life option may have been recommended had the jury been assured that the judge would or could order that the sentences be served consecutively."

In *State v. Allard,* 75 Ohio St.3d at 492, 663 N.E.2d at 1287, when faced with the same issue, we responded that "assertions regarding the jury's possible motives for asking about consecutive and concurrent sentences are purely speculative" and "the trial court's response to the jury's question was proper, since a jury has no option of recommending whether life sentences should run consecutively or concurrently."

Mitts relies on *Simmons v. South Carolina* (1994), 512 U.S. 154, 114 S.Ct. 2187, 129 L.Ed.2d 133. *Simmons* held that a trial judge violated an accused's due process rights by refusing to instruct the jury that a life sentence, under the facts and the applicable law, carried with it no possibility of parole. Mitts's reliance on *Simmons* is misplaced. In *Simmons,* South Carolina statutes prohibited Simmons's release on parole. This information was relevant given the prosecution's argument of Simmons's future dangerousness and the evidence that the public misunderstood the meaning of "life imprisonment" in South Carolina. In *Simmons,* a plurality reasoned that, to the extent that the jury's misunderstanding (that Simmons could be released on parole) pervaded the jury's deliberations, it had the effect of creating a false choice between sentencing petitioner to death and sentencing him to a limited period of incarceration. *Id.* By contrast, in Mitts's case the prosecutor did not argue future dangerousness and there was no misunderstanding by the jury—the law in Ohio is that the judge is to make the determination of whether sentences will be served concurrently or consecutively.

Moreover, counsel's argument that it was unrealistic to think that the trial judge would impose concurrent sentences here is speculative. Accordingly we overrule Mitts's first proposition of law.

## B
### Merger of Capital Specifications

In his third proposition of law, Mitts contends that the trial court's failure to merge duplicative capital specifications was prejudicial error because significant mitigating evidence existed. Both aggravated murder counts charged Mitts with three course-of-conduct specifications, R.C. 2929.04(A)(5). For example, Count One, alleging the aggravated murder of Sgt. Glivar, included specification three, a course-of-conduct specification in which Bryant was killed. Specification four alleged a course of conduct in which Mitts attempted to kill Lt. Kaiser, and specification five alleged a course of conduct in which Mitts attempted to murder Officer Mackey. Count Two, alleging the aggravated murder of Bryant, included three similar specifications concerning Sgt. Glivar, Lt. Kaiser, and Officer Mackey.

Multiple course-of-conduct specifications are duplicative and must be merged at the sentencing phase. See *State v. Jenkins* (1984), 15 Ohio St.3d 164, 194–200, 15 OBR 311, 337–342, 473 N.E.2d 264, 292–296. In fact, such multiple course-of-conduct specifications should not even be included in an indictment. In *State v. Spisak* (1988), 36 Ohio St.3d 80, 84, 521 N.E.2d 800, 803, this court held that "[e]ach aggravated *murder* count should thus contain only one specification that appellant's acts were part of a course of conduct." Further, if such multiple specifications are included in an indictment, the "trial court should instruct the jury in the penalty phase that those duplicative specifications must be considered merged for purposes of weighing the aggravating circumstances against the mitigating factors." *State v. Garner* (1995), 74 Ohio St.3d 49, 53, 656 N.E.2d 623, 630. No such instruction was given in this case. To determine whether that omission constituted reversible error we must engage in a two-pronged analysis. *Id.*, citing *State v. Jenkins,* 15 Ohio St.3d 164, 15 OBR 311, 473 N.E.2d 264, at paragraph five of the syllabus. In the first prong we determine "whether the specifications at issue 'ar[o]se from the same act or indivisible course of conduct,' and were thus, in fact, duplicative." *Id.*, quoting *State v. Jenkins,* 15 Ohio St.3d 164, 15 OBR 311, 473 N.E.2d 264, at paragraph five of the syllabus. The court of appeals correctly held, and the state concedes, that the specifications were duplicative.

For the second prong, we must "determine whether the jury's penalty-phase consideration of those duplicative aggravating circumstances affected its verdict, and independently determine whether the merged aggravating circumstances

outweigh the mitigating factors beyond a reasonable doubt." *Id.* "[M]erging of aggravating circumstances [can] take place upon appellate review," and "resentencing is not automatically required." *State v. Jenkins,* 15 Ohio St.3d 164, 15 OBR 311, 473 N.E.2d 264, at paragraph five of the syllabus; *State v. Garner,* 74 Ohio St.3d at 53, 656 N.E.2d at 630; *State v. Spisak,* 36 Ohio St.3d at 84, 521 N.E.2d at 803.

We find that the trial court's failure to instruct the jury that the duplicative specifications should be considered merged did not influence the jury to recommend the death penalty rather than life imprisonment. The outcome of the penalty hearing did not hinge on the failure to merge these three course-of-conduct specifications. We agree with the appellate court that merger of the duplicative course-of-conduct specifications into a single specification listing each shooting victim would not change the nature of the evidence which the jury was statutorily required to consider. Furthermore, the judge did not instruct the jury that its finding of guilt of multiple specifications should be deemed to increase the weight given the aggravating circumstances. Cf. *State v. Penix* (1987), 32 Ohio St.3d 369, 372, 513 N.E.2d 744, 747.

Moreover, our independent weighing of the mitigating factors against the properly merged aggravating circumstances may be used to cure the penalty-phase error. *State v. Combs* (1991), 62 Ohio St.3d 278, 286, 581 N.E.2d 1071, 1079; *Clemons v. Mississippi* (1990), 494 U.S. 738, 110 S.Ct. 1441, 108 L.Ed.2d 725. Accordingly, we reject Mitts's third proposition of law.

## C

### Jury Instruction Issues

With his fifth proposition of law, Mitts argues that the trial court erred by instructing the jury that its sentencing verdict was only a recommendation and not binding on the court. Mitts's counsel failed to object at trial and waived all but plain error. *State v. Slagle* (1992), 65 Ohio St.3d 597, 605, 605 N.E.2d 916, 925. Plain error is an obvious error or defect in the trial proceedings that affects a substantial right. Crim.R. 52(B). Under this standard, reversal is warranted only when the outcome of the trial would have been different without the error. *State v. Long* (1978), 53 Ohio St.2d 91, 7 O.O.3d 178, 372 N.E.2d 804, paragraph two of the syllabus.

This court has previously held that the trial court does not err by referring to the jury's verdict as a recommendation or by recognizing that the trial court would make the final decision on the death penalty. See, *e.g., State v. Woodard* (1993), 68 Ohio St.3d 70, 77, 623 N.E.2d 75, 80–81; *State v. DePew* (1988), 38 Ohio St.3d 275, 280, 528 N.E.2d 542, 550; *State v. Jenkins,* 15 Ohio St.3d 164, 15 OBR

311, 473 N.E.2d 264, at paragraph six of the syllabus. Accordingly, we overrule Mitts's fifth proposition of law.

In his sixth proposition of law, Mitts raises three additional penalty-phase issues, but Mitts's counsel failed to object or request additional instructions and again waived all but plain error. *State v. Williams* (1977), 51 Ohio St.2d 112, 5 O.O.3d 98, 364 N.E.2d 1364, paragraph one of the syllabus; *State v. Underwood* (1983), 3 Ohio St.3d 12, 3 OBR 360, 444 N.E.2d 1332, syllabus. First, Mitts argues that the trial court erred by giving the statutory definition of "reasonable doubt," as contained in R.C. 2901.05(D). In doing so, the trial court referred to the "truth of the charge." While this specific reference is inappropriate in the penalty-phase context, this deficiency was not outcome-determinative. See *State v. Taylor* (1997), 78 Ohio St.3d 15, 29, 676 N.E.2d 82, 96; *State v. Woodard,* 68 Ohio St.3d at 76–77, 623 N.E.2d at 80; *State v. Spirko* (1991), 59 Ohio St.3d 1, 17, 570 N.E.2d 229, 248.

Second, Mitts argues that the trial court gave an improper "acquittal-first" instruction on its sentencing deliberations in violation of *State v. Thomas* (1988), 40 Ohio St.3d 213, 533 N.E.2d 286. The court did *not* instruct the jury that it could consider lesser penalties only if it first unanimously rejected the death penalty. Instead, the court instructed that if all twelve members of the jury found that the state had not proved that the aggravating circumstances outweighed mitigating factors, then it must choose between the possible life sentences. That instruction is consistent with R.C. 2929.03(D)(2) and does not constitute error. *State v. Taylor,* 78 Ohio St.3d at 28–29, 676 N.E.2d at 95; *State v. Davis* (1996), 76 Ohio St.3d 107, 116–118, 666 N.E.2d 1099, 1108–1109.

Third, Mitts complains because the trial court instructed, without objection, that the jury "must not be influenced by *any* consideration of sympathy or prejudice," as opposed to the term "*mere* sympathy." Again, this issue lacks merit. Sympathy is not a relevant sentencing criteria, and "[t]here is no practical difference between 'mere sympathy' and 'any sympathy' in this context." *State v. Taylor,* 78 Ohio St.3d at 30, 676 N.E.2d at 96. The court's instruction to the jury not to consider sympathy or prejudice was a correct statement of the law. *State v. Allen* (1995), 73 Ohio St.3d 626, 638, 653 N.E.2d 675, 687; *State v. Steffen* (1987), 31 Ohio St.3d 111, 125, 31 OBR 273, 285, 509 N.E.2d 383, 396; *State v. Jenkins,* 15 Ohio St.3d 164, 15 OBR 311, 473 N.E.2d 264, at paragraph three of the syllabus. Thus, we reject Mitts's sixth proposition of law.

With Proposition of Law VIII, Mitts argues that the trial court erred in refusing to instruct the jury that "it could consider as mitigating the fact that the appellant was highly intoxicated at the time of the offense." The court, however,

followed the statutory language in R.C. 2929.04(B), and accurately stated the law by instructing the jury to consider the accused's "history, character and background," as well as his lack of a criminal record and "[a]ny other factors that are relative [sic] to the issue whether defendant should be sentenced to death."

Thus, the jury was allowed to consider all of the mitigation evidence including Mitts's asserted intoxication, as well as his counsel's argument that intoxication was a mitigating factor. The jury was not precluded from considering any evidence as mitigating. In *State v. Landrum* (1990), 53 Ohio St.3d 107, 122, 559 N.E.2d 710, 727–728, we held that a trial judge did not err by simply following the statutory language and declining to instruct that particular evidence was a possible specific mitigating factor. We find that Mitts's eighth proposition of law lacks merit.

## D

### Ineffective Assistance of Counsel

In his seventh proposition of law, Mitts argues that his counsel's failure to object to improper jury instructions deprived him of his constitutional right to the effective assistance of counsel. Reversal of a conviction or sentence on the grounds of ineffective assistance of counsel requires that the defendant show, first, that counsel's performance was deficient and, second, that the deficient performance prejudiced the defense so as to deprive the defendant of a fair trial. *Strickland v. Washington* (1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693. To demonstrate that counsel is deficient, appellant must show that counsel's performance fell below an objective standard of reasonable representation. *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph two of the syllabus. To demonstrate prejudice, appellant must prove that there exists a reasonable probability that were it not for counsel's error, the result of the trial would have been different. *Id.* at paragraph three of the syllabus.

Mitts's claims of ineffective assistance do not meet the *Strickland* standard. Since we have previously concluded that the trial court's "acquittal first" instruction, "reasonable doubt" definition, and use of the term "recommendation" were not erroneous, counsel's performance was not deficient for failing to raise these issues. (See discussion of Propositions of Law V and VI, above.)

As we discussed under Proposition of Law III, the course-of-conduct death-penalty specifications should have been merged. Any deficiency in counsel's failure to raise this issue, however, did not prejudice the defendant because, as we determined, the failure to merge was not outcome-determinative.

Mitts also raises his counsel's failure to object to prosecutorial misconduct. On that point, however, Mitts fails to describe specifically any alleged prosecutorial misconduct. Hence, we reject this proposition of law.

### E

### Trial Court's Sentencing Opinion

In his tenth proposition of law, Mitts argues that the "trial court improperly weighed the relevant sentencing factors" in imposing the death sentence on Mitts.

In imposing a sentence, "the assessment and weight to be given mitigating evidence are matters for the trial court's determination." *State v. Lott* (1990), 51 Ohio St.3d 160, 171, 555 N.E.2d 293, 305. The fact that mitigation evidence is admissible "does not automatically mean that it must be given any weight." *State v. Steffen* (1987), 31 Ohio St.3d 111, 31 OBR 273, 509 N.E.2d 383, paragraph two of the syllabus. See, also, *State v. Stumpf* (1987), 32 Ohio St.3d 95, 512 N.E.2d 598, paragraph two of the syllabus. R.C. 2929.03(F) does require, however, that the trial court state in its separate opinion its specific findings as to the existence of the mitigating factors, the aggravating circumstances the offender was found guilty of committing, and the reasons why the aggravating circumstances were sufficient to outweigh the mitigating factors. R.C. 2929.03(F); *State v. Maurer* (1984), 15 Ohio St.3d 239, 15 OBR 379, 473 N.E.2d 768, paragraph three of the syllabus.

We agree with Mitts that the trial court erred by not separately weighing the aggravating circumstances in each count of aggravated murder. *State v. Cooey* (1989), 46 Ohio St.3d 20, 544 N.E.2d 895, paragraph three of the syllabus. The trial court also incorrectly stated that no evidence of any statutory mitigating factors existed; in fact, the evidence showed that Mitts had no criminal record. See R.C. 2929.04(B)(5). Although the trial court correctly identified the aggravating circumstances, the trial court did not merge the specifications as it should have done. (See discussion on Proposition of Law III.) Nor does the trial court's opinion explain why the aggravating circumstances outweighed the mitigating factors. See *State v. Fox* (1994), 69 Ohio St.3d 183, 190–191, 631 N.E.2d 124, 130–131.

Despite these deficiencies in the trial court's opinion, we find that reversal is not required. The court of appeals already noted these defects and determined, after an independent sentence review, that the death penalty was appropriate. Further, our "independent review of a sentence will cure any flaws in the trial court's opinion." *State v. Fox*, 69 Ohio St.3d at 191, 631 N.E.2d at 131. Accord *State v. Hill* (1996), 75 Ohio St.3d 195, 210, 661 N.E.2d 1068, 1082; *State v. Lott*, 51 Ohio St.3d at 170–173, 555 N.E.2d at 304–307. Accordingly, we overrule the tenth proposition of law.

### III

### Independent Sentence Assessment

In his ninth proposition of law, Mitts argues that "the proven aggravating factors * * * do not outweigh the mitigating factors," summarizes the mitigating evidence, and outlines various mitigating factors he draws from that evidence. We will consider these arguments in our independent sentence review.

Pursuant to R.C. 2929.05, we independently weigh the aggravating circumstances against the mitigating factors and determine whether Mitts's sentence is disproportionate to sentences in similar cases.

Sgt. Glivar's murder has two aggravating circumstances: (1) that the victim was a peace officer in the line of duty (R.C. 2929.04[A][6]) and (2) that the murder was part of a course of conduct involving the purposeful killing or attempt to kill two or more persons (R.C. 2929.04[A][5]). Bryant's murder carries only the course-of-conduct aggravating circumstance. The evidence proves these aggravating circumstances beyond a reasonable doubt.

We find that the nature and circumstances of these offenses do not offer the slightest mitigating value. In contrast, Mitts's history, character, and background are entitled to some mitigating weight. As several witnesses testified, Mitts was respected and loved by his family and was a devoted father. See *State v. Fox*, 69 Ohio St.3d at 194, 631 N.E.2d at 133. Mitts's brother testified that Mitts was the oldest child in the family and that while growing up Mitts looked after the younger children. Mitts's sister described Mitts as "laid-back" and a "gentle giant," who was very protective of his brothers and sisters. Mitts served honorably for four years in the Coast Guard, and he was gainfully employed all of his life. See *State v. Lundgren* (1995), 73 Ohio St.3d 474, 495, 653 N.E.2d 304, 324–325; *State v. Fox, supra; State v. Simko* (1994), 71 Ohio St.3d 483, 496, 644 N.E.2d 345, 350; *State v. Brewer* (1990), 48 Ohio St.3d 50, 64, 549 N.E.2d 491, 505. We accord all of these factors some mitigating weight.

R.C. 2929.04(B)(1) through (4) and (6) are not applicable in this case. The victims did not "induce or facilitate" the offenses and Mitts did not act under "duress, coercion or strong provocation." (R.C. 2929.04[B][1] and [2].) The expert opinion testimony confirmed that Mitts did not suffer from any "mental disease or defect." (R.C. 2929.04[B][3].) Mitts was forty-two years old at the time of the offenses and was the principal offender. (R.C. 2929.04[B][4] and [6].)

Mitts had no criminal record, and this "noteworthy" mitigating factor in R.C. 2929.04(B)(5) is entitled to significant mitigating weight. See *State v. Fox*, 69 Ohio St.3d at 195, 631 N.E.2d at 133–134.

As to "other factors" (R.C. 2929.04[B][7]), Mitts claims remorse for his actions as well as the influence of alcohol as mitigating factors. Mitts's expression of

remorse in his unsworn statement is entitled to some weight. See *State v. Rojas* (1992), 64 Ohio St.3d 131, 143, 592 N.E.2d 1376, 1387. As to alcohol, Mitts presented no evidence that he was an alcoholic, and voluntary drunkenness is entitled to very little mitigating weight. See, *e.g.*, *State v. Slagle*, 65 Ohio St.3d at 614, 605 N.E.2d at 931.

We now weigh these mitigating factors against the aggravating circumstance(s) in each murder. "When a capital defendant is convicted of more than one count of aggravated murder, * * * [o]nly the aggravating circumstances related to a given count may be considered in assessing the penalty for that count." *State v. Cooey* (1989), 46 Ohio St.3d 20, 544 N.E.2d 895, paragraph three of the syllabus. Based on the evidence, we find that the aggravating circumstances in the murder of Sgt. Glivar outweigh the mitigating factors. As to the murder of Bryant, we also find that the aggravating circumstance outweighs the mitigating factors.

We further conclude that the death penalty imposed for each aggravated murder is appropriate and proportionate when compared with similar capital cases. As to "course of conduct" murders, see *State v. Allard* (1996), 75 Ohio St.3d 482, 663 N.E.2d 1277; *State v. Williams* (1996), 74 Ohio St.3d 569, 660 N.E.2d 724; *State v. Dunlap* (1995), 73 Ohio St.3d 308, 652 N.E.2d 988; *State v. Loza* (1994), 71 Ohio St.3d 61, 641 N.E.2d 1082; *State v. Grant* (1993), 67 Ohio St.3d 465, 620 N.E.2d 50; *State v. Lorraine* (1993), 66 Ohio St.3d 414, 613 N.E.2d 212; *State v. Hawkins* (1993), 66 Ohio St.3d 339, 612 N.E.2d 1227; *State v. Montgomery* (1991), 61 Ohio St.3d 410, 575 N.E.2d 167; and *State v. Combs* (1991), 62 Ohio St.3d 278, 581 N.E.2d 1071. When compared with prior cases involving the murder of a peace officer, the death penalty is also appropriate and proportionate. See, *e.g.*, *State v. Zuern* (1987), 32 Ohio St.3d 56, 512 N.E.2d 585; *State v. Glenn* (1986), 28 Ohio St.3d 451, 28 OBR 501, 504 N.E.2d 701.

Accordingly, we affirm the convictions and death penalty.

*Judgment affirmed.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER and LUNDBERG STRATTON, JJ., concur.

## APPENDIX

"Proposition of Law I: In a capital murder trial, the court must instruct the jury that it may recommend consecutive life sentences where the defendant has been convicted of two separate and distinct counts of aggravated murder. The failure to instruct properly is violative of the Fifth, Eighth and Fourteenth Amendments to the United States Constitution.

"Proposition Law II: The trial court may not prohibit an expert witness from answering a hypothetical question where it is relevant and would assist the jury in analyzing the evidence.

"Proposition of Law III: Failing to merge capital specifications which results in jury consideration of duplicative aggravating factors cannot been [*sic*] held as harmless error where significant factors in mitigation were introduced into evidence.

"Proposition of Law IV: The trial court must charge the jury on the defense of voluntary intoxication where a reasonable jury could find that the defendant could not form the requisite intent due to his or her inebriation. The failure to provide the intrution [*sic*] is violative of the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and Article I, Sections 9 and 16 of the Ohio Constitution.

"Proposition of Law V: The trial court may not instruct the jury that its death verdict was only a recommendation but a life verdict was binding on the court.

"Proposition of Law VI: Inaccurate penalty phase instructions that misguide the jury as to their duties under the law render the resultant sentence unreliable and violative of the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution and §§ 9, 10 and 16, Article I, of the Ohio Constitution.

"Proposition of Law VII: Where trial counsel fails to object to erroneous jury instructions and improper comments of the prosecutor, the defendant is denied effective assistance of counsel where there is a reasonable probability that the death sentence would not have been recommended had counsel made the objections.

"Proposition of Law VIII: The trial court may not refuse to provide relevant mitigating instructions to the penalty phase jury. The refusal to instruct is in contravention of the Fifth, Eighth and Fourteenth Amendments to the United States Constitution.

"Proposition of Law IX: Where the proven aggravating factors in the evidence do not outweigh the mitigating factors present pursuant to Ohio Rev.Code § 2929.03, a sentence of the death sentence [is] violative of the Fifth, Sixth, Eighth and Fourteenth Amendments of the United States Constitution and Article I, Sections 9 and 16 of the Ohio Constitution.

"Proposition of Law X: The trial court improperly weighed the relevant sentencing factors inviolation [*sic*] of R.C. 2929.03(F).

"Proposition of Law XI: Imposition of the death sentence violates the Sixth, Eighth and Fourteenth Amendments to the United States Constitution and Sections 2, 9, 10 and 16, Article I, of the Ohio Constitution."