OPINION
{¶ 1} The defendant-appellant, Cameron Briggs ("Briggs"), appeals the judgment of the Allen County Common Pleas Court, convicting him of felonious assault, pursuant to a jury's verdict, and sentencing him to six years in prison.
 {¶ 2} At approximately 10:30 p.m. on November 16, 2005, Briggs drove himself and Rebecca Vezina ("Vezina") to the home of David Jette ("Jette"). Briggs, Vezina, Jette, Tyrone Maddox ("Maddox"), and several other people met in Jette's living room to discuss some gossip, allegedly started or spread by Briggs. In particular, the group discussed Briggs's allegation that Maddox had stolen money from a mutual friend. When the discussion concluded at approximately 11:00 or 11:30 p.m., Jette returned several DVDs, which were packaged together as a box set, to Briggs. Maddox and Briggs exited the apartment and walked to Briggs's car. The evidence is conflicting as to whether Maddox helped Briggs by carrying the DVDs and whether people[1]
outside the apartment made threatening comments to Briggs as he walked to his car. Briggs opened the front passenger door of his car; put the DVDs in the car; removed his coat, shirt, and apron;[2] removed a box-cutter from the apron; put his coat back on; and put the box-cutter in the coat pocket. Briggs testified that the box-cutter had been in his apron pocket from work, and he keeps the box-cutter in his apron because of how often he needs it to cut open boxes of food.
 {¶ 3} The evidence is disputed as to what occurred next. Briggs contends that the people gathered outside the apartment were threatening him, and three people had come close to the car to prevent him from getting in the driver's seat and driving away. Briggs testified that Maddox punched him and they began fighting. Briggs stated that Maddox put his right arm around Briggs's neck so he could not breathe, which is when Briggs grabbed the box-cutter and stabbed over his right shoulder at Maddox. The witnesses who testified on behalf of the State of Ohio ("State") all stated nobody made any comment to Briggs as he walked to his car, and that nobody was near his car except himself and Maddox. The State's witnesses testified that Maddox had helped carry Briggs's personal belongings to his car, that Briggs was the aggressor, punching Maddox when he turned away, and that Maddox and Briggs began fighting. The jury apparently found the State's witnesses more credible than Briggs.
 {¶ 4} Eventually, Maddox realized he had been cut and walked away from Briggs, who got in his car and drove back to his apartment. Maddox went into Jette's bathroom where Jette attempted to administer first aid after calling 9-1-1. Paramedics took Maddox to St. Rita's Hospital, where doctors performed surgery, using over 300 stitches to suture approximately six cuts. Maddox suffered a cut to the left side of his face, from his temple almost to his jaw; a cut across the bottom of his neck; a cut to his right ear; and several cuts on his left arm. Officers from the Lima Police Department arrested Briggs at his apartment that night.
 {¶ 5} On November 22, 2005, Scott Leland, a detective from the Lima Police Department, filed a complaint in Lima Municipal Court, stating that Briggs had committed felonious assault, a violation of R.C. 2903.11(A)(1). Briggs waived a preliminary hearing, and on January 20, 2006, the Allen County Grand Jury indicted Briggs on one count of felonious assault, a violation of R.C. 2903.11(A)(2), a felony of the second degree. At arraignment, Briggs pled not guilty. The record, as relevant to this appeal, indicates that the State filed a motion for discovery on January 31, 2006, and also on that date, the State filed a response to Briggs's demand for discovery. Briggs subsequently filed a motion requesting a bill of particulars, which the State filed on March 28, 2006, and a motion for funds to secure a private investigator, which was granted on February 8, 2006. The State filed supplemental discovery on April 3, 2006, and the case proceeded to jury trial on April 4 and 5, 2006. The jury found Briggs guilty, and the court entered judgment thereon, sentencing Briggs to six years in prison. Briggs appeals the trial court's judgment and asserts the following assignments of error:
The Defendant was deprived of his right to effectiveassistance of counsel according [sic] guaranteed by the Sixth andFourteenth Amendments to the U.S. Constitutional [sic] and hisrights under the Ohio Constitution because his [c]ounsel failedto comply with the reciprocal discovery rule.
 The trial court erred in not instructing the jury on theinferior offense of aggravated assault.
 {¶ 6} For ease of analysis, we elect to address the assignments of error out of order. In the second assignment of error, Briggs contends the trial court erred by failing to instruct the jury on aggravated assault, a lesser included offense of felonious assault. Briggs contends he was seriously provoked because he was attacked by a "mob" of people. Briggs contends "[i]n his somewhat paranoid state, this provocation from the victim put the Defendant into a sudden rage, as he was in fear of his life."
 {¶ 7} In response to the second assignment of error, the State argues the trial court did not err by failing to instruct on the lesser included offense of aggravated assault. The State contends the evidence did not establish provocation because Briggs testified he feared for his safety. Additionally, there was no testimony showing Briggs acted in a sudden passion or fit of rage. Furthermore, the State contends the trial court instructed the jury on the affirmative defense of self-defense.
 {¶ 8} Aggravated assault is a lesser included offense of felonious assault. State v. Deem (1988), 40 Ohio St.3d 205,210-211, 533 N.E.2d 294. The two offenses are similar, except for the "additional mitigating element of serious provocation" for aggravated assault. Id. at 211. If a defendant produces sufficient evidence of serious provocation during trial, the court must instruct the jury on aggravated assault. Id.
"Provocation, to be serious, must be reasonably sufficient tobring on extreme stress and the provocation must be reasonablysufficient to incite or to arouse the defendant into using deadlyforce. In determining whether the provocation was reasonablysufficient to incite the defendant into using deadly force, thecourt must consider the emotional and mental state of thedefendant and the conditions and circumstances that surroundedhim at the time."
Id. (quoting State v. Mabry (1982), 5 Ohio App.3d 13,449 N.E.2d 16, paragraph five of the syllabus). "Thus, in a trial for felonious assault, where the defendant presents sufficient evidence of serious provocation (such that a jury could both reasonably acquit defendant of felonious assault and convict defendant of aggravated assault), an instruction on aggravated assault (as a different degree of felonious assault) must be given." (Emphasis sic.) Id.
 {¶ 9} In this case, even if we construe the evidence in Briggs's favor, the record is insufficient to show serious provocation. Briggs testified that as they were walking toward his car, Maddox asked him "`Do you want to take anything off or put anything in your car so that it doesn't get ruined?'" (Trial Tr., May 23, 2006, 179:8-9). Briggs testified that he removed his coat, shirt, and apron, put his belongings in the car, replaced his coat, and put the box-cutter in the coat pocket. (Trial Tr., at 180-181). Then, Maddox stated, "`You're taking too long'" and punched Briggs in the right side of the face. (Trial Tr., at 182). Briggs also testified that four other people participated in the fight. (Trial Tr., at 183:18-21). Briggs testified that he pulled the box-cutter out of his pocket and stabbed at Maddox over his right shoulder because Maddox had his right arm around Briggs's neck and the other people were involved. (Trial Tr., at 183-184).
 {¶ 10} On this evidence, we cannot find serious provocation to justify the use of deadly force. First, Briggs testified that he "didn't know if they had a baseball bat somewhere, or if one of them had a knife." (Trial Tr., at 203:14-15). He also testified that he did not see any weapons. (Trial Tr., at 204). Second, Briggs apparently knew there would be a fight because he stated, "[t]hey asked me if I wanted to take anything off so it didn't get ruined, which I thought was gentlemanly." (Trial Tr., at 210:16-17). Based on his testimony, Briggs clearly anticipated a fight from the time he walked out the front door until the fight began, especially in light of his testimony that he put purposely removed the box-cutter from his apron pocket and put it in his coat pocket. All of this evidence indicates that Briggs anticipated a fight and the use of the box-cutter. Furthermore, he saw no weapon and speculated that somebody may have one. Therefore, we cannot find Briggs was in a "sudden rage" when he cut Maddox, even if Maddox was the aggressor, and the trial court did not err in so finding.
 {¶ 11} The trial court instructed the jury on self-defense, which is a "`complete defense to all substantive elements of the crime charged' (or, consequently, to any lesser included offense)." State v. Shadd, 3rd Dist. No. 9-94-5, unreported (quoting State v. Nolton (1969), 19 Ohio St.2d 133, 135,249 N.E.2d 797). Therefore, we have held that a defendant who asserts self-defense "is not entitled under Ohio law to instructions on self-defense and on lesser included offenses, but must choose between the two." Id. (citing Nolton, at 135). In Briggs's brief, he repeatedly argued he was acting in self-defense.[3] During opening statements, defense counsel stated:
We believe the evidence in this case will show that Mr. Briggsdid not initiate [the fight]. At this particular time, he wasattempting to defend himself. He honestly believed at thattime that he was in fear of life and limb and had to use theforce that he did.
(Emphasis added.) (Trial Tr., at 21:4-7). Although Briggs requested jury instructions on aggravated assault and self-defense, he was not entitled to both. (Trial Tr., at 219:9-12). However, since the evidence did not support an instruction on aggravated assault, the trial court did instruct on self-defense. The second assignment of error is overruled.
 {¶ 12} In the first assignment of error, Briggs contends trial counsel was ineffective because it failed to provide reciprocal discovery pursuant to Crim.R. 16(C). Briggs contends his attorney "knew of the existence of the jacket prior to trial and even went so far as to go to the house of the person holding the jacket in order to examine it." Briggs argues that such a serious violation of the discovery rule cannot be construed as a trial strategy. Briggs also contends "[t]he exclusion of the jacket and any testimony about it also prejudiced the defendant's claim of self-defense" because neither the defense nor the State could perform forensic testing and because neither defense witness could testify that there was blood on the jacket.
 {¶ 13} In response, the State contends Briggs had the effective assistance of counsel. The State argues Briggs knew about the coat for "many weeks prior to defense counsel obtaining the same information." The State contends that the testimony established Briggs had worn the coat during the fight, and even if the coat were blood-stained, it "would have been of no apparent evidentiary significance."
 {¶ 14} To establish ineffective assistance of counsel, Briggs must show that "(1) counsel's performance was deficient or unreasonable under the circumstances; and (2) the deficient performance prejudiced the defense." State v. Price, 3rd
Dist. No. 13-05-03, 2006-Ohio-4192, at ¶ 6 (citing State v.Kole, 92 Ohio St.3d 303, 306, 2001-Ohio-191, 750 N.E.2d 148
(quoting Strickland v. Washington (1984), 466 U.S. 668, 687,104 S.Ct. 2052, 80 L.Ed.2d 674)). In proving that the defendant was prejudiced by counsel's actions, the appellant must demonstrate that "there is a reasonable probability that, but for counsel's performance, the result of the proceeding would have been different." Id. at ¶ 6 (citing Strickland, supra at 694). "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, that course should be followed." State v. Loza (1994), 71 Ohio St.3d 61, 83,641 N.E.2d 1082 (citing Strickland, supra at 697).
 {¶ 15} Crim.R. 16(C)(1)(a) allows the prosecution to seek discovery from a defendant. The rule states:
[i]f on request or motion the defendant obtains discoveryunder subsection (B)(1)(c), the court shall, upon motion of theprosecuting attorney order the defendant to permit theprosecuting attorney to inspect and copy or photograph * * *tangible objects * * * available to or within the possession,custody or control of the defendant and which the defendantintends to introduce in evidence at the trial.
Crim.R. 16(C)(1)(a). If a party fails to comply with the discovery rules, the court may "prohibit the party from introducing in evidence the material not disclosed". Crim.R. 16(E)(3).
 {¶ 16} In this case, the State filed a motion for discovery on January 31, 2006 pursuant to Crim.R. 16(C)(1)(a). Briggs produced a witness list in compliance with the motion; however, he did not report any physical evidence. On the second day of trial, Briggs called Stacy Cramer ("Cramer") to testify on his behalf. On direct examination, Cramer testified in pertinent part as follows:
Q: Now, as far as — well, anything else that he had on?
 A: Just that coat.
 Q: The coat?
 A: Yea.
 Q: Tell us a little bit about the coat.
 A: It has blood all over the back, just all over the back ofit.
 Q: Okay. As far as this particular coat is concerned, whathappened to the coat?
 A: When I asked him what happened he said that there was —
 MR. WALDICK: Objection.
 Q: Okay. What happened to the coat?
 A: My understanding was there was somebody on the back ofhim.
 Q: Okay. What I'm asking, though, is as far as the coatitself, —
 A: I have the coat.
 Q: You have the coat?
 A: Yea. Yea.
 Q: How did you end up with this coat?
 A: Because it was still in his apartment.
 Q: What did you do with the coat?
 A: Put it in a garbage bag and kept it.
 Q: You've kept the coat since that time?
 A: Yes.
 Q: Do you have that?
 A: Yes.
 Q: This is the bag that it's been in?
 A: Yes.
 Q: I'll have you take it out.
(Trial Tr., at 126-127). The physical evidence was a surprise to the State and the trial court. After allowing both parties to inspect the coat and to question Cramer, the court also questioned Cramer about the coat.[4] Cramer's testimony indicated that a large man in a suit came to her house shortly after the stabbing and asked to see the coat. The man was not in police attire, did not produce a badge, did not produce a business card, and did not ask Cramer to do anything with the coat. The man merely stated he would return at a later date to retrieve the coat, which he did not do.[5] Having listened to the evidence, the trial court determined Briggs had violated Crim.R. 16(C)(1) and excluded the coat and testimony concerning the coat pursuant to Crim.R. 16(E).
 {¶ 17} Even if we construe the evidence in Briggs's favor and believe that the coat contained bloodstains from more than one person, we find the results of trial would not have been different. Having determined that a jury instruction on aggravated assault was improper, the trial court could have, and did, instruct on self-defense. However, the evidence indicates Briggs used unnecessary force by introducing a deadly weapon into a fist fight, especially when Briggs sustained several scrapes and red marks while the victim required more than 300 stitches. Therefore, the results of trial would not have been different even if trial counsel had complied with the discovery rules.State v. Jackson (1986), 22 Ohio St.3d 281, 284, 490 N.E.2d 893
("[i]f the force used is so greatly disproportionate to appellant's apparent danger to show an unreasonable purpose to injure the victim, then the defense of self-defense is not available."). On this record, we cannot find Briggs had the ineffective assistance of counsel. The first assignment of error is overruled.
 {¶ 18} The judgment of the Allen County Common Pleas Court is affirmed.
Judgment affirmed.
 Shaw and Cupp, JJ., concur.
[1] Each witness had a different estimate as to how many people were at Jette's home; however, it appears there were between ten and fifteen people present by the time Briggs tried to leave.
[2] On November 16, 2005, Briggs had worked at Applebee's until approximately 9:30 p.m. The apron was apparently part of his work attire, which he was still wearing several hours after leaving the restaurant.
[3] "The exclusion of the jacket and any testimony about it also prejudiced the defendant's claim of self-defense." Appellant's Br., Jun. 20, 2006, at 6. "Defense counsel's failure to abide by the reciprocal discovery provisions let Mr. Brigg's [sic] claim of self-defense rest only on Mr. Brigg's [sic] testimony." Id. "However, it may have found Ms. Cramer's testimony credible and allowed the jury to find self-defense or even allow a finding of reasonable doubt." Id. at 6-7.
[4] All of this occurred outside the presence of the jury.
[5] The parties speculated that the man may have been a private investigator hired by Briggs's first attorney, especially since Briggs had filed a motion for funds to secure a private investigator, which the trial court granted.