OPINION
{¶ 1} The defendant-appellant, Juan Saldana, appeals the judgment of the Wyandot County Common Pleas Court convicting him of felonious assault following a jury trial. On appeal, Saldana argues the trial court erred by failing to instruct the jury on the inferior offense of aggravated assault because there was sufficient evidence of serious provocation to warrant the instruction. For the reasons set forth herein, we affirm the judgment of the trial court.
 {¶ 2} On October 18, 2007, Chief James Brenzina, of the Sycamore Police Department, filed a complaint against Saldana in the Upper Sandusky Municipal Court charging Saldana with felonious assault. Saldana waived his preliminary hearing and consented to being bound over to the common pleas court. On November 14, 2007, the Wyandot County Grand Jury indicted Saldana on one count of felonious assault, a violation of R.C. 2903.11(A)(2), a second-degree felony. Saldana filed a notice claiming self-defense as an affirmative defense, and the case proceeded to jury trial on January 29 and 30, 2008. At trial, the following facts were related to the jury.
 {¶ 3} On October 17, 2007, Saldana visited the Sycamore Tavern to drink a few beers and play pool. That evening, Dean LeGron was also at the bar. Prior to visiting the bar, LeGron consumed twelve beers and several shots of liquor. At the bar, Saldana, who had drunk three beers, and LeGron played a game of pool *Page 3 
after placing a $5 bet on the game. At some point in the game, Saldana used a jump-shot to score points. LeGron argued that Saldana had not called the pocket and had made a "slop-shot." Saldana argued that he had pointed to the pocket with his pool stick, which is a known signal for calling the targeted pocket. The bartender intervened, and the men finished their game. After the game, Saldana returned to the bar to drink his fourth beer. Saldana testified that LeGron hit him in the back of the head while he was sitting at the bar, prompting him to stand up and push LeGron. However, LeGron testified that Saldana randomly got up, ran across the bar, and tackled him, breaking the cue stick LeGron had been holding. The bartender testified only that she saw Saldana stand up and tackle LeGron, breaking the cue stick.
 {¶ 4} The bartender told LeGron to leave the bar, and he did so. When Saldana attempted to finish his beer, the bartender told him he had to leave as well. While Saldana was looking for his glasses and possibly a cell phone, which were lost during the altercation with LeGron, LeGron reentered the bar to retrieve his change. The testimony was disputed whether Saldana and LeGron shook hands at that time. LeGron exited the bar, and Saldana exited shortly thereafter.
 {¶ 5} The testimony concerning what happened outside of the bar was also in dispute. Saldana testified he had walked to the American Legion when LeGron ran up behind him, and the two men locked arms and then separated. Saldana *Page 4 
stated that LeGron pulled a knife and threatened to "fuck you up." During this time, LeGron referred to Saldana as a "Mexican," a "`spic," and other "nasty words." Saldana testified that LeGron swung at him with the knife in his right hand, which Saldana blocked. Saldana claimed LeGron then swung at him with his empty left hand, and Saldana "blocked" LeGron's arm with his right hand, in which he had a knife. The knife stabbed LeGron in the tricep muscle of his left arm.
 {¶ 6} LeGron testified that he never pulled a knife on Saldana. LeGron stated that he had left the bar and briefly visited a friend who lived in an apartment above the bowling alley, which is located next to the bar. When he came down the stairs and onto the sidewalk, Saldana was outside of the bar, and the two began to argue in front of the tavern. Saldana told LeGron, "I'll stab you," and LeGron told him to go ahead and stab him, thinking Saldana would not follow through with his threat. LeGron stated that he frequently uses a utility knife in his employment and that he had the utility knife in his pocket. However, he denied removing the knife from his pocket at any time, threatening to use the knife, or even attempting to remove the knife from his pocket. LeGron stated that he put his left arm up to defend himself from Saldana's attack, resulting in him being stabbed in the left tricep muscle. Immediately after being stabbed, LeGron went back to his friend's apartment. *Page 5 
 {¶ 7} The owner of the bowling alley testified that he was closing the business at the time the fight occurred. He stated that he looked out a window prior to exiting the bowling alley, as he does every night, and upon doing so, noticed two men arguing in front of the Sycamore Tavern. He stated that their words were muffled, but he thought he heard the word "knife" so he began to pay more attention to the situation. Under the street light, he could see the shorter of the two men, Saldana, wielding a knife. He testified that the taller man did not have a knife, but put his arms up in the air. At that point, he retreated into the bowling alley to call the police. After calling the police, he returned to the window, but the men were gone.
 {¶ 8} Having heard the testimony and having seen the evidence, the jury found Saldana guilty of felonious assault. The trial court subsequently convicted Saldana and sentenced him to a four-year prison term. Saldana appeals the judgment of the trial court, raising one assignment of error for our review.
 Assignment of Error The trial court erred in not instructing the jury on the inferior offense of aggravated assault.
 {¶ 9} To support his assignment of error, Saldana argues that he presented evidence, which if construed in his favor, would support his contentions that he acted under extreme emotional distress brought on by serious provocation. For that reason, he contends the trial court was required to instruct the jury on the *Page 6 
inferior offense of aggravated assault. In response, the state claims Saldana failed to object to the jury instructions, and the trial court's failure to instruct on aggravated assault does not rise to the level of plain error. The state argues that an instruction for aggravated assault was not warranted because Saldana's testimony revealed only that he was scared and wanted to defend himself. The state contends Saldana did not act under "the influence of sudden passion or in a sudden fit of rage."
 {¶ 10} The Supreme Court of Ohio has determined that aggravated assault is an "inferior degree" offense to felonious assault.[1]State v. Deem (1988), 40 Ohio St.3d 205, 210-211, 533 N.E.2d 294. Thus, "where the defendant presents sufficient evidence of serious provocation (such that a jury could both reasonably acquit defendant of felonious assault and convict defendant of aggravated assault), an instruction on aggravated assault (as a different degree of felonious assault)must be given." (emphasis sic). Id. at 211.
 {¶ 11} Trial courts have broad discretion in determining whether the *Page 7 
evidence adduced at trial was sufficient to warrant a jury instruction.State v. Jacobs, 4th Dist. No. 03CA24, 2004-Ohio-3393, at ¶ 27, citing State v. Mitts (1998), 81 Ohio St.3d 223, 228,690 N.E.2d 522. However, the trial court will not abuse its discretion by not giving a jury instruction if the evidence is insufficient to warrant the instruction. Id., citing State v. Lessin (l993), 67 Ohio St.3d 487, 494,620 N.E.2d 72. An "`abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219, 450 N.E.2d 1140, quoting State v. Adams (1980),62 Ohio St.2d 151, 157, 404 N.E.2d 144, internal citations omitted.
 {¶ 12} The trial court must engage in a two-part inquiry to determine whether the evidence was sufficient to warrant a jury instruction on aggravated assault. Jacobs, at ¶ 28.
 First, the court must objectively determine whether the alleged provocation is reasonably sufficient to bring on a sudden passion or fit of rage. Mack, 82 Ohio St.3d at 201, 694 N.E.2d 1328. "`If this objective standard is met, the inquiry shifts to a subjective standard, to determine whether the defendant in the particular case `actually was under the influence of sudden passion or in a sudden fit of rage.'" Id., quoting Shane, 63 Ohio St.3d at 634-45, 590 N.E.2d 724.
Jacobs, at ¶ 28.
 Provocation, to be serious, must be reasonably sufficient to bring on extreme stress and the provocation must be reasonably sufficient to incite or to arouse the defendant into using deadly *Page 8 force. In determining whether the provocation was reasonably sufficient to incite the defendant into using deadly force, the court must consider the emotional and mental state of the defendant and the conditions and circumstances that surrounded him at the time. (State v. Mabry [1982], 5 Ohio App.3d 13, 5 OBR 14, 449 N.E.2d 16, paragraph five of the syllabus, approved.)
State v. Deem, 40 Ohio St.3d 205, 533 N.E.2d 294, at paragraph five of the syllabus. "The provocation must be reasonably sufficient to incite the defendant to use deadly force. For provocation to be reasonably sufficient, it must be sufficient to arouse the passions of an ordinary person beyond the power of his or her control." State v. Shane (1992),63 Ohio St.3d 630, 635, 590 N.E.2d 272.
 {¶ 13} In this case, the evidence was insufficient to warrant a jury instruction on aggravated assault. The crux of Saldana's testimony was set forth above. Additionally, during direct examination, Saldana stated that after he pushed LeGron, they "sort of just shake hands and everything — I thought everything was fine right there, everything ended." (Trial Tr., Jun. 30, 2008, at 235). Saldana testified that he and LeGron shook hands again after LeGron reentered the bar to retrieve his change. (Id. at 236). Testifying about what happened once he left the bar, Saldana stated, "I felt very scared. Uhm, my life was in danger, and like I said, I just wanted to defend myself. I never really wanted to attack this person." On cross-examination, Saldana stated that he did *Page 9 
not get angry when LeGron used racial slurs and derogatory language toward him. (Id. at 253).
 {¶ 14} Generally, past threats and altercations are not deemed sufficient provocation where there is a cooling off period. State v.Smith, 168 Ohio App.3d 141, 2006-Ohio-3720, 858 N.E.2d 1222, at ¶ 48, citing State v. Mack (1998), 82 Ohio St.3d 198, 201, 694 N.E.2d 1328. Saldana testified that he and LeGron shook hands on two occasions in the bar, and he believed the animosity had subsided. Saldana's testimony reveals that between the time Saldana pushed LeGron and the time Saldana exited the bar, both parties were acting civilly, indicating an adequate cooling off period.
 {¶ 15} Also, "`[w]ords alone will not constitute reasonably sufficient provocation to incite the use of deadly force in most situations.'"Smith, at ¶ 48, quoting State v. Shane (1992), 63 Ohio St.3d 630,590 N.E.2d 272, at paragraph two of the syllabus. The testimony of LeGron and the owner of the bowling alley show that words alone were the only "provocation." Finally, fear alone is insufficient to prove that the defendant acted under the influence of sudden passion or a fit of rage.State v. Mack, 82 Ohio St.3d at 201, 694 N.E.2d 1328, citing State v.Collins (1994), 97 Ohio App.3d 438, 445-446, 646 N.E.2d 1142; State v.Cunningham (Oct. 17, 1991), 2d Dist. No. 2759; State v. Williams (Aug. 13, 1992), 8th Dist. No. 60819. There is not one shred of evidence on the record *Page 10 
that Saldana was in a state of sudden passion or fit of rage when he stabbed LeGron. This is so even if we believe Saldana's testimony over that of LeGron and an eye-witness. After testifying that LeGron ran up behind him, locked arms with him, and then swung at him with a knife, Saldana simply stated that he was afraid and acted to defend himself.
 {¶ 16} If the trial court believed Saldana that LeGron was the aggressor, there may been sufficient evidence to survive the objective standard part of the Mack test. However, construing the trial evidence in favor of Saldana, we cannot hold that the trial court abused its discretion by not instructing the jury on the inferior offense of aggravated assault because Saldana did not produce sufficient evidence to satisfy the subjective prong of the Mack test. The sole assignment of error is overruled.
 {¶ 17} The judgment of the Wyandot County Common Pleas Court is affirmed.
Judgment affirmed.
 SHAW, P.J., and ROGERS, J., concur.
[1] Saldana notes this Court's decision in State v. Briggs, 3d Dist. No. 1-06-27, 2006-Ohio-5144, in which the Court apparently misquotedDeem, though its holding was properly applied. The Court held the evidence was insufficient to warrant a jury instruction on the offense of aggravated assault, even though it misquoted Deem, by stating that aggravated assault was a lesser included offense, rather than an inferior degree offense, of felonious assault. Briggs, at ¶ 9-10. *Page 1