Appellant Anthony Atkins appeals the decision of the trial court convicting him of aggravated burglary and felonious assault and sentencing him accordingly. Atkins assigns the following two errors for our review:
 I. THE APPELLANT WAS NOT ADVISED OF HIS RIGHT TO REPRESENT HIMSELF AND WAS DEPRIVED OF HIS SIXTH AMENDMENT RIGHT TO REPRESENT HIMSELF.
 II. THE APPELLANT WAS DENIED HIS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL.
Having reviewed the record and the legal arguments of the parties, we affirm the decision of the trial court. The apposite facts follow.
On January 16, 1998, fifty-five year old Estelle Ikner was babysitting Sylvan Cornelius' three children. Approximately three weeks earlier, Cornelius had ended her relationship with her boyfriend, Anthony Atkins, and ordered him to move out of her house. On the evening in question, Cornelius instructed Ikner not to let Atkins into the house.
Atkins came to the house several times on the evening of January 16, 1998, but was repeatedly refused entry. Angered by Ikner's refusal to admit him, Atkins kicked the door and cursed Ikner, threatening to "get" her. When Atkins ran from the porch, a frightened Ikner took the children upstairs. From an upstairs window, Ikner watched Atkins grab two milk crates and start towards the house. Upon reaching the porch, Atkins discarded the milk crates, picked up a two-by-four and used it to break the window. Ikner closed the bedroom door, turned off the lights, and barricaded the door with a dresser.
Shortly thereafter, Cornelius returned home and called out to Ikner asking her what had happened. Ikner and the children left their hiding place and returned downstairs. Ikner told Cornelius about the incident. Thereafter, Cornelius went to a nearby phone booth to call the police. Shortly after Cornelius returned to the home, her landlord, Janet Jackson, arrived with her fianceacute, Bill Lemon. As Lemon entered the home, Atkins suddenly appeared and walked in behind him.
Cornelius ordered Atkins to leave. He replied by asking her what he had done. Cornelius told him about breaking the window and Atkins denied doing anything. Cornelius' children screamed to Atkins "You did do it," but Atkins continued to deny any wrongdoing and suggested that Cornelius ask Ikner what happened. Ikner replied "You did it." Atkins told her not to say that. Ikner replied "you did do it." Thereafter, Atkins hit Ikner in the jaw with a closed fist, knocking her down. Ikner stood up, grabbed the two-by-four and swung it at Atkins. Atkins grabbed the two-by-four, knocked Ikner back to the floor and began hitting and kicking her.
Cleveland police officer Jose Delgado arrived at Ida Rose and saw Atkins kicking Ikner. He identified himself as a police officer and ordered him to stop. Atkins turned to look at Delgado then resumed kicking Ikner. After Atkins again Ignored Delgado's order to stop. Delgado grabbed him around the neck and pulled him away. As he dragged Atkins away, Atkins struggled with the officer and pushed him against the wall. Delgado's partner, Officer Warrington, joined the struggle and the officers dragged Atkins outside onto the porch. Once there, the three men slipped and fell on the ice. Delgado attempted to grab his pepper spray, but Atkins swung at him with his elbow. Officer Delgado hit Atkins' hand and pushed him down. Thereafter, Warrington sprayed Atkins with pepper spray and the officers were able to subdue him. Officer Delgado suffered an injury to his right index finger. Ikner suffered chest and abdominal injuries.
Atkins was arrested and charged with aggravated burglary, felonious assault, and assault. At trial, the State presented the testimony of Ikner, Delgado, and Cornelius. Atkins testified in his own defense and denied attacking Ikner and struggling with police. Atkins was convicted of aggravated burglary and felonious assault. He was found not guilty of assaulting Officer Delgado. This appeal followed.
In his first assignment of error, Atkins argues he was deprived of his Sixth Amendment right to self-representation when the trial court failed to advise him of that right. Atkins argues there was a complete breakdown of the attorney-client relationship as evidenced by his pro-se filings of a motion to dismiss the indictment, his refusal to wear civilian clothes against his attorney's advice, his decision to testify on his own behalf, and his insistence on subpoenaing witnesses against the advice of his attorney.
A criminal defendant has the right to represent himself if he chooses to do so. State v. Weiss (1993), 92 Ohio App.3d 681, 684, appeal dismissed (1994), 69 Ohio St.3d 1436, citing Faretta v.California (1975), 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562;State v. Edsall (1996), 113 Ohio App.3d 337, 339, appeal dismissed (1997), 77 Ohio St.3d 1514. However, he must first knowingly, intelligently, and voluntarily waive his right to counsel. Faretta
at 835, 95 S.Ct. at 2541, 45 L.Ed.2d at 581-582, paragraph one of the syllabus. In this case, Atkins admits that he did not explicitly waive his right to counsel, but argues that such a waiver may be implied. Though it is true that Ohio courts have held that a defendant may waive his right to counsel by his actions, a defendant's failure to cooperate with his attorney is insufficient to imply a waiver of counsel. See State v. Ebersole
(1995), 107 Ohio App.3d 288, 293.
In this case, although Atkins criticized his trial counsel's handling of his case and his failure to subpoena certain witnesses, Atkins never asked to represent himself. He argues that his failure to make such a request should be excused because he was never informed of his right to self-representation. However, "the trial court has no affirmative duty to inform a defendant that he has a Sixth Amendment right of self-representation which he could have asserted during trial when, even though the defendant indicates that he is dissatisfied with counsel, [defendant] does not indicate that he wishes to represent himself." State v. Bagley
(Oct. 15, 1996), Franklin App. Nos. 96APA04-554 and 96APA05-614, unreported, appeal dismissed (1997), 78 Ohio St.3d 1488 citingState v. Scott (September 29, 1988), Franklin App. No. 88AP-346, unreported, appeal dismissed (1988), 40 Ohio St.3d 708. See alsoState v. Reed (July 16, 1999), Lucas App. No. L-98-1367, unreported (Appellant's constitutional right to self-representation was not invoked where appellant never asked the court to discharge his counsel or made a request to represent himself.) In this case, Atkins never expressed a desire to defend himself. Accordingly, we overrule his first assignment of error.
In his second assignment of error, Atkins argues he was denied his right to effective assistance of counsel. In order to prevail on an ineffective assistance of counsel claim, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. State v. Stojetz (1999), 84 Ohio St.3d 452, 457, reopening denied (1999), 86 Ohio St.3d 1454. See also State v.Mitts (1998), 81 Ohio St.3d 223, 234, reconsideration denied (1998), 82 Ohio St.3d 1444. Atkins argues that the trial court denied him the effective assistance of counsel by refusing his request for someone else to represent him. However, it is well settled that an indigent defendant has no right to counsel of his choice.
 There exist points at which the process of administering justice must be balanced with the defendant's right to counsel. The right to have counsel assigned by the court does not impose on the court a duty to allow the accused to choose his own counsel, for the selection of counsel is within the sound discretion of the court. Thurston v. Maxwell
(1965), 3 Ohio St.2d 92, 209 N.E.2d 204. We have found that while "the Constitution guarantees indigent defendants competent appointed counsel at trial and on direct appeal, it does not guarantee counsel of choice." State v. Bryant (May 8, 1996), Summit App. No. 17618, unreported.
Edsall at 340-341.
Our review of the record reveals that Atkins' predominant complaint about the representation of his trial counsel was his failure to subpoena certain witnesses for the defense. However, Atkins' counsel vehemently insisted that calling such witnesses would be detrimental to Atkins' defense. We must presume that, as a licensed attorney, Atkins' trial counsel was competent to assess the impact of those witnesses' testimony. See State v. Logan
(September 30, 1999), Cuyahoga App. No. 74629, unreported, citingState v. Smith (1985), 17 Ohio St.3d 98, 100. Armed with such a presumption, we are unable to conclude that trial counsel's failure to subpoena the witnesses amounted to an unreasonable error that denied Atkins his right to a fair trial or that the outcome of trial would have been different if the testimony had been presented. Accordingly, we overrule Atkins' second assignment of error.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
JOHN T. PATTON. P.J., and MICHAEL J. CORRIGAN. J., CONCUR.
 _______________________________ PATRICIA ANN BLACKMON, JUDGE