JOURNAL ENTRY and OPINION
The court found defendant Theodore Poelking guilty of three counts of aggravated arson, two counts of grand theft automobile, one count of arson, one count of theft, and one count of breaking and entering. With the aid of an accomplice, Poelking stole a car, broke into a car dealership, stole money and a second car, and set the premises on fire. The arguments on appeal fall under two broad subjects: sentencing and evidence.
The state had an overwhelming case against Poelking based on his signed confession to all charges. In that confession, Poelking detailed how he and an accomplice stole a car and drove to a car dealership. Poelking pried open a window, went into an office and stole money from a cash box. He went on to admit that he set the premises on fire just before escaping, and took a new car off of the lot as a getaway car. The fire caused nearly $1.5 million in damage to the building and nearly $400,000 in business interruption losses. Three firefighters testified to the conditions in the building during the fire.
Poelking tried the case on the theory that his voluntary intoxication precluded him from forming the requisite criminal intent to commit the offenses. He claimed that he had taken four Percocet tablets and consumed a great deal of beer and tequila before committing the offenses (it was New Year's Eve). At trial, he claimed not to be able to remember anything that happened from the time he and the accomplice stole the first car to when he had been dropped off after the theft. He could not, however, explain why he had been able to recall clearly the specifics of the crime just days after the fact, when he had been held in jail.
 I
Poelking claims that there was insufficient evidence to prove he committed aggravated arson. He argues that the state failed to show (a) that he had the requisite mental state to commit the offense, (b) that he set the fire, and (c) that he knowingly created a substantial risk of serious physical harm to the firefighters.
 A
R.C. 2909.02(A)(1) states that no person, by means of fire or explosion, shall knowingly "create a substantial risk of serious physical harm to any person other than the offender." Poelking argues that his intoxication on the night of the offense prevented him from forming the requisite intent of "knowingly."
In State v. Fox (1981), 68 Ohio St.2d 53, 54-55, the Ohio Supreme Court stated, "the common law and statutory rule in American jurisprudence is that voluntary intoxication is not a defense to any crime." However, "where specific intent is a necessary element, * * * if the intoxication was such as to preclude the formation of such intent, the fact of intoxication may be shown to negative this element." Id. at 55. It has been said that intoxication will negate the requisite culpable mental element when the offender is "so intoxicated as to be mentally unable to intend anything." State v. Jackson (1972), 32 Ohio St.2d 203, 206,291 N.E.2d 432, quoting Wertheimer, The Diminished Capacity Defense to Felony-Murder(1971), 23 Stanford L.Rev. 799, 805. Stated another way, "[e]vidence of intoxication is sufficient to raise the intoxication defense only where, if believed, it would support acquittal." State v.Mitts (1998), 81 Ohio St.3d 223, 229, citing State v. Hicks (1989),43 Ohio St.3d 72, 75.
Evidence of Poelking's intoxication did not rise to the level where, if believed, it would support acquittal on the arson or theft charges. Just eighteen days after committing the offense, Poelking was able to give the police a statement that accurately detailed virtually all of his actions when committing the offense. As if to underscore this point, Poelking stated:
 I remember getting to the office near the front of the building where there was a closet. I was suppose [sic.] to look to find the money. There was suppose [sic.] to be a box or something. I found money in a metal box and in some envelopes. I remember a cash register box cause [sic.] I wanted some change.
He also recalled using his cigarette lighter to set the fire, and said that he must have set fire to papers that were in the cash box. He even recalled a specific bit of conversation, saying that after he started the fire, his accomplice said, "[i]t's time to go."
All of these statements show that Poelking had not been so intoxicated that he could not form the requisite intent to commit the charged crimes. The court did not err by rejecting the intoxication defense.
 B
Poelking next argues that the state failed to show that he actually set the fire.
When considering the sufficiency of the evidence supporting a charged count, we view the evidence in a light most favorable to the state to determine whether any reasonable trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Statev. Jenks (1991), 61 Ohio St.3d 259, 273.
We can summarily reject this argument, as the accomplice also confessed and said that Poelking started the fire. Moreover, the accomplice testified for the state at trial and once again blamed Poelking. The accomplice's confession and testimony, taken in conjunction with Poelking's own confession, convincingly establish that a reasonable trier of fact could have found the elements of arson proven beyond a reasonable doubt.
 C
For his last argument on the sufficiency of the evidence, Poelking claims the state failed to establish the aggravated arson element of "substantial risk of serious physical harm" to the firefighters because he claims that firefighters always face a risk of serious physical harm whenever they put out a fire, so his act of arson did not expose the firefighters to any risk beyond that which they would have faced in their roles as firefighters.
The statutory definition of substantial risk of serious physical harm to any person includes the creation of a substantial risk of serious physical harm to emergency personnel. See R.C. 2909.01(A)(1). Municipal firefighters are classified as emergency personnel. See R.C. 2909.01(A)(2). The term "substantial risk" is defined in R.C. 2901.01(A)(8) as a "strong possibility, as contrasted with a remote or significant possibility, that a certain result may occur or that certain circumstances may exist."
All three firefighters testified and said that in addition to there being a great deal of smoke and exposed wiring, they had been particularly concerned with the building's roof. The fire had severely damaged the roof's structural support, and the weight of a very large air conditioning unit on the roof began to cause the roof to sag to the point where the firefighters were ordered to retreat to a safe spot.
The evidence of an imminent roof collapse was sufficient to establish the element of a substantial risk of serious physical harm. Danger is an obvious occupational hazard for firefighters, but the General Assembly knew that when it enacted R.C. 2909.01(A)(1) and included emergency personnel within the class of persons who could be victimized by aggravated arson. The reasons for doing so are obvious — firefighters might knowingly accept danger as part of the job, but that fact does not excuse the offender's knowledge that starting a fire will subject firefighters to unknown elements of harm — every fire takes on a life of its own. Emergency personnel deserve the same protections as the rest of the public.
The discussion held on the record relating to Poelking's motion for judgment of acquittal showed that the court correctly considered the statutory elements of aggravated arson along with the correct definition of "substantial risk." As trier of fact, it was within the court's province to find, as a matter of fact, that the state presented sufficient evidence of each element of aggravated arson against the three firefighters. State v. Martin (1986), 21 Ohio St.3d 91, 95. The aggravated arson judgments of conviction were supported by sufficient evidence.
 II
Poelking next argues that the court lacked sufficient evidence to find him guilty of theft and breaking and entering because his intoxication prevented him from forming the requisite mental state to commit those offenses. We reject this argument for the same reasons supporting his conviction on the aggravated arson and arson charges.
 III
Poelking claims the court erroneously considered other acts evidence when making factual determinations about the charges against him. This argument relates to evidence that just two weeks after breaking into the car dealership and setting it on fire, Poelking returned to the dealership and again broke into the building. Although this second break-in was charged as a separate criminal offense (and given a different case number), there were references at trial to some of the circumstances involving the second offense — primarily Poelking's use of a screw driver and photographs of the building taken after the second offense.
A detailed discussion of these specific points is not required because this case was tried to the court, so "[w]e indulge in the usual presumption that in a bench trial in a criminal case the court considered only the relevant, material, and competent evidence in arriving at its judgment unless it affirmatively appears to the contrary." State v.White (1968), 15 Ohio St.2d 146, 151.
But in any event, Poelking cannot show that the court relied on irrelevant evidence, and even if he could make that showing, the admission of his confession provided all of the evidence the court needed to establish his guilt. Other acts evidence would not have resulted in the court's judgment of conviction.
 IV
Poelking's next arguments relate to the three counts of aggravated arson. In separate arguments, he claims the court erred by failing to find the three counts of aggravated arson to be allied offenses of similar import and failing to merge the three counts of aggravated arson for sentencing.
We can quicky dispose of these arguments by citing to our recent decision in State v. Maynard (Mar. 16, 2000), Cuyahoga App. No. 75722, unreported. Under nearly identical circumstances, Maynard had been charged with ten individual counts of aggravated arson relating to firefighters who responded to the fire he intentionally set. We quoted from State v. Blankenship (1988), 38 Ohio St.3d 116, 117, for the proposition that "[w]hen an offense is defined in terms of conduct towards another, then there is a dissimilar import for each person affected by the conduct." Because the indictment against Maynard, just like that in this case, alleged conduct against different victims, the charged offenses did not meet the requirements of R.C. 2941.25(A) for being allied. That being the case, the court did not err by failing to merge the sentences.
 V
The remaining arguments relate to the court's decision to impose the maximum sentences on the aggravated arson counts and its decision to run those counts consecutively.
 A
If the court wishes to impose the maximum sentence on an offender, it must first make a finding that the offender committed the worst form of the offense or that the offender poses the greatest likelihood of committing future crimes. See R.C. 2929.14(C). Second, the sentencing court must state reasons that support its findings. See R.C.2929.14(B)(2)(d); State v. Parker (2001), 144 Ohio App.3d 344, 336.
The court made these findings on the record:
 * * * I have reviewed R.C. 2929.14(C) and the Court finds it is justified in imposing one or more maximum sentences on Mr. Poelking today and the reason for that is if you look at R.C. 2929.14(C), this Court in order to impose sentence or a "longest prison term," I have to be able to find that you pose — that you committed the worst form of the offense or you pose the greatest likelihood of committing future crimes. Well, that is certainly true in your case.
 This explosion which you were convicted of causing, the fire that you were convicted of setting, can fairly be described as the worst form of the offense, to destroy a business like that and cause $3 million worth of damage, but even aside from that and independent of that, your criminal history, combined with the series of serious crimes that you were convicted at trial of prove that you do pose the greatest likelihood of committing future crimes.
 One of the reasons that you do is that you drink yourself into oblivion and you do not know what you are doing and then you don't exercise self-control and we now have a pretty good history on what it is you do when you are out of your mind, so doesn't really help us that you don't intentionally go out to hurt people. You, in fact, do hurt people because you do not exercise self-control. You don't keep yourself sober. You are one dangerous person in this Court's eyes.
This explanation sufficiently states the required findings. The court found that Poelking committed the worst form of the offense by reasoning that he indiscriminately caused nearly $3 million in property damage, for no apparent reason other than being intoxicated. The court likewise considered Poelking's very extensive criminal record, and the fact that he had been paroled from prior offenses for only two days at the time he committed the aggravated arsons, to justify its conclusion that he posed the greatest likelihood of committing future crimes. Certainly, Poelking's untreated addictions to drugs and alcohol made him a significant threat to reoffend. Either one of these facts alone would justify a maximum sentence. Taken together, they constitute overwhelming justification for the court's decision to impose maximum sentences.
Poelking argues that maximum sentences were disproportionate to the harm caused by his actions. He concedes the monetary loss to the car dealership, but maintains the car dealership continued in business under makeshift conditions so his actions could not have made this the worst form of the offense.
Because this case was tried to the court, as opposed to a jury, we acknowledge that the court necessarily was in a position to reference a great deal of trial evidence when marshalling reasons in support of its sentencing decisions. Although this point should be obvious, it bears emphasizing that findings previously given on the record in support of a judgment of conviction can be applied with equal force during sentencing. So it would truly be redundant for us to require courts sitting without juries to recite the same factual findings anew in sentencing. For this reason, we have no quarrel with the court's decision to incorporate by reference evidence it heard at trial. The court clearly did so by noting "the series of serious crimes that you were convicted at trial * * *." Strict adherence to the law should never be interpreted to require a vain act. When the reasons underlying a judgment of conviction can be applied with equal force to sentencing decisions, the court's failure to specifically state those same findings anew cannot be grounds for reversing a sentence.
The Ohio Supreme Court has recently cautioned us that we are not to substitute our judgment for that of the court when reviewing sentencing decisions. See State v. Jones (2001), 93 Ohio St.3d 391, 399-400. With that admonition in mind, we find the court could rationally look at Poelking's conduct and decide that his acts were wanton and placed firefighters at risk beyond that normally faced in a fire. Moreover, the commission of a crime for no reason at all can sometimes be the worst form of the offense because the offender's actions go unexplained, leaving a victim without closure. The facts presented here show Poelking burned down a building for no reason at all, with complete disregard for the consequences to the owner of the property or those firefighters would be called to extinguish the fire. We are unable to say that the court's sentences were disproportionate to the offenses.
 B
The court may impose consecutive sentences only if it finds that the consecutive sentences are necessary to protect the public from future crime or to punish the offender, and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public. See R.C. 2929.14(E)(4). The court must then make additional findings, as applicable here, that the harm caused by the multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of the offender's conduct or that the offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime. See R.C. 2929.14(E)(4)(b).
The court made these findings:
 I find it is clear from your record of crimes, especially now your record of committing violent and dangerous crimes, dangerous to innocent people, that consecutive service of sentences is necessary to protect the public from future crime by you. It is also necessary to punish you and these consecutive sentences are not disproportionate to the seriousness of your conduct and the danger that you pose to the public.
 I do find that your history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by you and the harm caused by the multiple offenses that I'm sentencing you on today was so great or unusual that no single prison term for any of these offenses adequately reflects the seriousness of your conduct.
Again, the court's statements fully comply with the sentencing statutes as the court made the applicable findings and clearly stated its reasons in support of those findings. Poelking's extensive criminal history coupled with his decision to reoffend just days after being paroled, gave the court more than enough reason to think that he would reoffend in the future. The court did not err by imposing consecutive sentences.
 VI
Poelking's last argument is a catch-all based on counsel's alleged errors during trial. All of these relate to claims previously raised and rejected in this appeal. None of the claims constitutes errors by counsel that would have affected the outcome of trial. We summarily reject them.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
PATRICIA A. BLACKMON, J., and TERRENCE O'DONNELL, J., CONCUR.