JOURNAL ENTRY AND OPINION
{¶ 1} Harry Dunlap appeals his convictions on two counts of felonious assault, in violation of R.C. 2903.11, following a jury trial. Dunlap claims he was wrongfully convicted of felonious assault because his trial counsel was ineffective by not requesting a jury instruction on the lesser included charge of negligent assault. Dunlap further argues that the trial court erred by refusing to instruct the jury on an affirmative defense to felonious assault, i.e., the defense of others. Dunlap admits to shooting his neighbor's friend, who was helping the neighbor move, after having a verbal altercation with the neighbor moments before. After a careful review of the record and the applicable law, we find no merit to any of Dunlap's assertions and affirm his convictions.
 {¶ 2} Harry Dunlap had lived at 1115 East 177th Street in the city of Cleveland for about fourteen years. He resided there with his wife and daughter, Amanda. Directly next door, at 1119 East 177th Street, lived Kizzie Williams and her boyfriend, Donald Scruggs.
 {¶ 3} Dunlap and Scruggs had a tumultuous relationship since Scruggs had moved in next door. Their first verbal altercation arose when Scruggs played his car stereo loudly in the early hours of the morning. Dunlap claims he asked Scruggs politely to turn down the music to which Scruggs only replied to him with profanity. Scruggs claims that Dunlap had been overly aggressive when asking him to turn down his car radio, which led him to ignore Dunlap's request. Dunlap claims this initial altercation led to verbal confrontations with Scruggs occurring on a daily basis in which Scruggs would constantly insult him using profanity.
 {¶ 4} Dunlap claims that on one particular occasion, Scruggs threatened to shoot him with a gun; however, Dunlap admits to never seeing Scruggs with a gun. Amanda stated that she heard Scruggs threaten to shoot her father with a gun. Dunlap claims he never called the police to report the loud music or the threats made by Scruggs because he was afraid of what Scruggs would do after the police left.
 {¶ 5} On February 27, 2003, Scruggs and Kizzie rented a U-Haul truck in order to move to a new home. Scruggs had lived next door to Dunlap for about two years. Around 4:00 p.m., the victim, Douglas Williams, Kizzie's father, arrived at her home with his brother-in-law, Ricky Davis, to help her move. When Williams arrived, he and Davis started to load the U-Haul truck, which was parked in the driveway. Williams had been to Kizzie's home twice before and had never met any of her neighbors.
 {¶ 6} Scruggs arrived home around 5:30 p.m. accompanied by his friend, Charles Boswell, and started to help Williams load the U-Haul truck. Scruggs noticed Dunlap pulling into his driveway next door around 6:00 p.m. When Dunlap exited his car, he and Scruggs exchanged some heated words. Dunlap claims Scruggs threatened that "he was going to get [him] tonight," while Scruggs claims that Dunlap used racial slurs against him. As this verbal altercation unfolded, Scruggs and Boswell were standing in Scruggs' driveway while Williams was inside of the U-Haul truck.
 {¶ 7} Following this exchange, Dunlap went into his house and stated to his wife that he did not deserve this "crap" from Scruggs. Hearing her father very upset, Amanda and her boyfriend, Adam Somich, decided to leave the premises. Dunlap followed Amanda and Mark outside and went into his garage.
 {¶ 8} Dunlap went into his car and retrieved a .25 caliber semi-automatic pistol from under the front seat. Amanda, seeing the pistol in her father's hand, dialed 9-1-1. Dunlap walked through his backyard, over to the corner of his house, and looked into Scruggs' driveway; no one at Scruggs' home was outside at the time. Amanda stayed at her father's side and pleaded with him to put the gun down and to go back inside.
 {¶ 9} Suddenly, Williams appeared from inside of the U-Haul truck and looked toward Dunlap and his daughter. Williams stated that Dunlap simply raised his pistol and began to fire. Nothing was said by either man before Dunlap fired. The first shot that was fired struck Williams in the leg; the second shot missed Williams, and the third shot struck him in the elbow. After he had been shot, Williams heard a woman say, "daddy, you shot the wrong man." Dunlap claims he shot Williams because he started to remove his left hand, which was in his coat pocket; Dunlap stated he thought Williams had a gun and he fired to protect his daughter.
 {¶ 10} Williams called out for help, ran into the front yard, and fainted behind his car. Dunlap followed Williams into the front yard. Amanda stated she had to kick her father in the thigh to stop him from shooting. Scruggs had been inside his house at the time of the shooting along with Boswell and Davis. Williams stated that he had never met or spoken with Dunlap before, nor had he been present during any of the previous verbal altercations between Dunlap and Scruggs.
 {¶ 11} After the shooting, Dunlap went into his house and placed the .25 caliber pistol on the kitchen counter. When the police arrived, they arrested Dunlap without incident in his driveway.
 {¶ 12} On April 23, 2003, the Cuyahoga County Grand Jury charged Dunlap with two counts of felonious assault, in violation of R.C. 2903.11. Both counts also included one- and three-year firearm specifications, pursuant to R.C. 2941.141 and 2941.145, respectively. Prior to trial, Dunlap filed a motion requesting the court to bifurcate the firearm specifications from the charges of felonious assault. The trial court granted the motion, and Dunlap elected to have a bench trial on the firearm specifications.
 {¶ 13} On February 2, 2004, a jury trial commenced on the felonious assault charges. Dunlap requested that a defense of others instruction be given to the jury; the request was denied by the trial court. On February 4, 2004, the jury returned a verdict of guilty on both counts of felonious assault. Thereafter, the trial court found Dunlap guilty on all firearm specifications.
 {¶ 14} On March 3, 2004, Dunlap was sentenced to a total of five years in prison. The trial court merged the two counts of felonious assault and sentenced Dunlap to two years of incarceration. The trial court also merged all of the firearm specifications into a three-year sentence and ordered that sentence to run prior to, and consecutive with, the sentence imposed for felonious assault.
 {¶ 15} Dunlap ("appellant") brings this timely appeal alleging four assignments of error for review:
 {¶ 16} "I. The trial court erred and denied appellant his constitutional right to due process when it denied defense counsel's request for a defense of others jury instruction."
 {¶ 17} In his first argument, the appellant claims the trial court erred by denying his request to instruct the jury on the affirmative defense of others claiming that he produced sufficient evidence to warrant the instruction.
 {¶ 18} Generally, it is the duty of the trial judge in a jury trial to state all matters of law necessary for the information of the jury in giving its verdict. R.C. 2945.11. Additionally, a trial court may not omit a requested instruction, if such instruction is "`a correct, pertinent statement of the law and [is] appropriate to the facts * * *.'" State v. Lessin,67 Ohio St.3d 487, 493, 1993-Ohio-52, 620 N.E.2d 72, quoting State v.Nelson (1973), 36 Ohio St.2d 79, 303 N.E.2d 865, paragraph one of the syllabus.
 {¶ 19} In determining whether to give a requested instruction, a trial court may inquire into the sufficiency of the evidence to support the requested instruction. Ibid. A trial court is vested with discretion to determine whether sufficient evidence was presented at trial to require a particular jury instruction. State v. Mitts, 81 Ohio St.3d 223, 228,1998-Ohio-635, 690 N.E.2d 522. If, however, the evidence does not warrant an instruction, or if an instruction is not appropriate in light of the crime charged, the trial court is not obligated to give the instruction. State v. Lessin, supra.
 {¶ 20} Thus, in our review we must determine whether the trial court abused its discretion by finding that the evidence was sufficient to support the requested charge or that the requested instruction was pertinent to the crime charged. Statev. Wolons (1989), 44 Ohio St.3d 64, 541 N.E.2d 443, paragraph two of the syllabus. To constitute an abuse of discretion, the ruling must be more than legal error; it must be unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217. "The term discretion itself involves the idea of choice, of an exercise of the will, of a determination made between competing considerations." State v. Jenkins (1984),15 Ohio St.3d 164, 222, quoting Spalding v. Spalding (1959),355 Mich. 382, 384-385. In order to have an abuse of that choice, the result must be so palpably and grossly violative of fact or logic that it evidences not the exercise of will but the perversity of will, not the exercise of judgment but the defiance of judgment, not the exercise of reason but instead passion or bias. Nakoffv. Fairview General Hospital (1996), 75 Ohio St.3d 254.
 {¶ 21} Under Ohio law, self-defense is an affirmative defense. State v. Martin (1986), 21 Ohio St.3d 91, 21 OBR 386,488 N.E. 2d 166. To warrant a self-defense instruction, a defendant must present evidence on the following elements: (1) that the defendant was not at fault in creating the situation giving rise to the affray; (2) that the defendant had a bona fide belief that he was in imminent danger of death or bodily harm and that his only means of escape from such danger was in the use of such force; and (3) that the defendant did not violate any duty to retreat or avoid the danger. State v. Barnes,94 Ohio St.3d 21, 24, 2002-Ohio-68, 759 N.E.2d 1240. State v. Robbins (1979),58 Ohio St.2d 74, 12 O.O.3d 84, 388 N.E.2d 755, paragraph two of the syllabus.
 {¶ 22} Ohio law has long recognized a privilege to defend the members of one's family. Sharp v. State (1850), 19 Ohio 379,387. If a person in good faith and upon reasonable ground believes that a family member is in imminent danger of death or serious bodily harm, such person may use reasonably necessary force to defend the family member to the same extent as the person would be entitled to use force in self-defense. State v.Williford (1990), 49 Ohio St.3d 247, 250.
 {¶ 23} In a criminal case, the proper standard for determining whether a defendant has successfully raised an affirmative defense under R.C. 2901.05 is to inquire whether thedefendant has introduced sufficient evidence, which, if believed, would raise a question in the minds of reasonable men concerning the existence of such issue. State v. Melchior
(1978), 56 Ohio St.2d 15; 381 N.E.2d 195, paragraph one of the syllabus; see, also, State v. Robbins (1979), 58 Ohio St.2d 74,80; 388 N.E.2d 755.
 {¶ 24} In the instant matter, the appellant claims he acted in the defense of his daughter, Amanda, when he shot Douglas Williams. The appellant claims he thought Williams had a gun in his left jacket pocket, and he shot him when Williams attempted to remove his hand from his pocket. The appellant testified that Scruggs had threatened to "get him tonight" when he came home from work. However, the appellant concedes that Williams had never threatened him, nor had Williams ever spoken with the appellant until after the appellant had shot him.
 {¶ 25} After reviewing the record, we find that there is no evidence to indicate that either Amanda or the appellant was in imminent danger of death or great bodily harm. The record reflects that the appellant went inside his house and was very upset following his confrontation with Scruggs. Seeing him upset, his daughter decided to leave the house with her boyfriend. The appellant then followed Amanda and her boyfriend outside and preceded into his garage where he retrieved a .25 caliber pistol from his car. The appellant then walked to the corner of his house and waited for someone to come outside from Scruggs' house. When Williams exited the U-Haul truck, he was shot by the appellant without provocation.
 {¶ 26} There are no reasonable grounds to believe that Williams was armed with a weapon or that he posed a threat or danger to the appellant or the appellant's daughter. The record indicates that Williams was inside the U-Haul truck when Scruggs and the appellant had their verbal altercation. Both the appellant and Williams testified that they had never seen the other before the shooting occurred. The appellant also admitted that he had never seen Scruggs with a weapon before.
 {¶ 27} Furthermore, by waiting with a loaded gun for someone to come out of Scruggs' house, the appellant was inciting violence and violating his duty to retreat from any perceived danger that was previously posed by Scruggs. Based on the facts in this case, it is clear that the appellant was the aggressor in this situation and escalated a verbal altercation into physical violence. If the appellant truly feared that Scruggs was "going to get him" or his family that night, he had plenty of time to call the police and report the threat made to him by Scruggs instead of getting a gun and shooting the first person who came out of Scruggs' house.
 {¶ 28} We find that the appellant did not produce sufficient evidence to warrant an instruction on the defense of others, and the trial court did not abuse its discretion in failing to provide that instruction to the jury. The appellant's first assignment of error is overruled.
 {¶ 29} The appellant's second and third assignments of error will be addressed together because they are interrelated.
 {¶ 30} "II. The evidence was insufficient as a matter of law to support a finding beyond a reasonable doubt that appellant was guilty of felonious assault."
 {¶ 31} "III. The trial court erred when it failed to provide a jury instruction which included an instruction on the lesser included offense of negligent assault."
 {¶ 32} The appellant's second assignment of error in based upon his first assignment. He claims his conviction for felonious assault was not supported by sufficient evidence because he has proved the affirmative defense of others by a preponderance of the evidence. The appellant argues that if the jury had been instructed on this defense, he would have been acquitted of the felonious assault. Having already found the appellant was not entitled to the defense of others instruction, based upon the evidence produced in this case, we find no merit to this assertion.
 {¶ 33} In his third assignment of error, the appellant argues that if the trial court was correct when deciding to exclude a jury instruction for the defense of others, then the trial court, in the alternative, committed reversible error in failing to provide the jury with an instruction on the lessor included offense of negligent assault.
 {¶ 34} We review this assignment under plain error because trial counsel failed to raise an objection as to whether the instruction on the lesser included offense of negligent assault should have been given to the jury. To constitute plain error, the error must be on the record, palpable, and fundamental, so that it should have been apparent to the trial court without objection. See State v. Tichon (1995), 102 Ohio App.3d 758,767, 658 N.E.2d 16. Moreover, plain error does not exist unless the appellant establishes that the outcome of the trial clearly would have been different but for the trial court's allegedly improper actions. State v. Nolling, 98 Ohio St.3d 44,2002-Ohio-7044, 781 N.E.2d 88; State v. Waddell (1996),75 Ohio St.3d 163, 166, 661 N.E.2d 1043. Notice of plain error is to be taken with utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice. State v.Phillips (1995), 74 Ohio St.3d 72, 83, 656 N.E.2d 643.
 {¶ 35} A jury instruction on a lesser included offense "is required only where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction upon the lesser included offense." State v. Thomas
(1988), 40 Ohio St.3d 213, 533 N.E.2d 286, paragraph two of syllabus. The evidence must be reviewed in the light most favorable to the appellant in this situation. State v. Wilkins
(1980), 64 Ohio St.2d 382, 415 N.E.2d 303. Negligent assault is the lessor included offense of felonious assault. State v.McCornell (1993), 91 Ohio App.3d 141.
 {¶ 36} Under R.C. 2903.14, negligent assault, "no person shall negligently, by means of a deadly weapon or dangerous ordnance as defined in section 2923.11 of the Revised Code, cause physical harm to another or to another's unborn." Further, under R.C. 2901.22(D), "A person acts negligently when, because of a substantial lapse from due care, he fails to perceive or avoid a risk that his conduct may cause a certain result or may be of a certain nature. A person is negligent with respect to circumstances when because of a substantial lapse from due care, he fails to perceive or avoid a risk that such circumstances may exist."
 {¶ 37} In contrast, under R.C. 2903.11, felonious assault, "(A) No person shall knowingly do either of the following: (1) Cause serious physical harm to another or to another's unborn; or (2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance." A firearm constitutes a deadly weapon under R.C.2923.11(B)(1). "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B).
 {¶ 38} In the instant matter, the appellant claims he aimed the pistol at the house, not at Williams, when he fired the first time. He testified that, when Williams did not move, he shot two more times in the direction of Williams and stated, "I hope to God I missed him." The appellant claims he had never been this upset before and had never acted this way. Based on these facts, the appellant claims he was entitled to an instruction on negligent assault. We disagree.
 {¶ 39} The appellant seems to contend that he did not intend to shoot Williams, yet he pointed a firearm at him and fired it at least three times. If the appellant did not intend to shoot Williams, then why did he not fire the pistol in the air, at the ground, or in any direction other than where Williams was standing? The appellant did not accidentally discharge his weapon. He stated he fired his weapon at Williams in response to Williams taking his left hand out of his jacket pocket. This mere fact negates that his actions could have been negligent. The appellant testified that when Williams did not respond to the first shot he fired, he fired at Williams two more times.
 {¶ 40} The appellant knowingly discharged his weapon in Williams' direction with the intent to cause him serious physical harm. The appellant stated that he thought Williams had a weapon in his pocket. Even if the appellant thought Williams was Scruggs, the argument for negligent assault would still be absurd and without merit.
 {¶ 41} We find no plain error in the lower court's failure to provided the jury with an instruction on negligent assault. There exists more than sufficient evidence for a jury to find that the appellant's acts were done knowingly, supporting his conviction for felonious assault. Furthermore, the outcome of the trial would not have been different had the negligent assault instruction been provided to the jury. The appellant's second and third assignments of error are overruled.
 {¶ 42} "IV. Appellant was denied his right to effective assistance of counsel guaranteed by Article I, Section 10 of the Ohio Constitution and the Sixth and Fourteenth Amendments to the United States Constitution when his attorney failed to request a jury instruction for a lesser included offense."
 {¶ 43} In appellant's final argument, he claims his trial counsel was ineffective for failing to request that the trial court provide the jury with an instruction for negligent assault.
 {¶ 44} It is presumed that a properly licensed attorney executed his legal duty in an ethical and competent manner.State v. Smith (1985), 17 Ohio St.3d 98. To prevail on a claim of ineffective assistance of defense counsel, a petitioner must demonstrate (1) that his trial counsel's performance fell below an objective standard of reasonableness, and (2) that trial counsel's deficient performance prejudiced his defense. SeeStrickland v. Washington (1984), 466 U.S. 668, 694,104 S.Ct. 2052, 80 L.Ed.2d 674; State v. Bradley (1989),42 Ohio St.3d 136, 538 N.E.2d 373. To establish prejudice, the petitioner must demonstrate that counsel's deficient performance "so undermined the proper functioning of the adversarial process that the trial could not have reliably produced a just result." State v.Powell (1993), 90 Ohio App.3d 260, 266, 629 N.E.2d 13; see, also, Strickland, supra.
 {¶ 45} As we have previously discussed in the appellant's third assignment of error, he was not entitled to a jury instruction on the lesser included offense of negligent assault. We held under the plain error standard that the result of the trial would not have been different had the jury been instructed as to both the crimes of felonious and negligent assault. Therefore, even if counsel's performance was deficient for not requesting the negligent assault instruction, the appellant was not prejudiced by this deficiency because the jury still would have found the appellant guilty of felonious assault given the evidence produced in this case. The appellant's fourth assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Gallagher, J., and *Sweeney, J., concur.
* Sitting by Assignment: Judge James D. Sweeney, Retired, of the Eighth District Court of Appeals.