[Cite as *State v. Dantz*, 2025-Ohio-1609.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | | |
|---|---|---|---|
| STATE OF OHIO, | : | | JUDGES: |
| | : | | Hon. Craig R. Baldwin, P.J. |
| Plaintiff - Appellee | : | | Hon. Robert G. Montgomery, J. |
| | : | | Hon. David M. Gormley, J. |
| -vs- | : | | |
| | : | | |
| BRADLEY DANTZ, | : | | Case No. 2024 CA 00087 |
| | : | | |
| Defendant - Appellant | : | | O P I N I O N |


CHARACTER OF PROCEEDING:        Appeal from the Stark County Court
                                of Common Pleas, Case No. 2023
                                CR 2755


JUDGMENT:                       Affirmed


DATE OF JUDGMENT:               May 5, 2025


APPEARANCES:

For Plaintiff-Appellee                  For Defendant-Appellant

KYLE L. STONE                           D. COLEMAN BOND
Prosecuting Attorney                    116 Cleveland Ave. NW
Stark County, Ohio                      Suite 600
                                        Canton, Ohio 44702
By: LISA A. NEMES
Appellate Division Chief
Assistant Prosecuting Attorney
110 Central Plaza South, Ste. 510
Canton, Ohio 44702-1413

*Baldwin, P.J.*

**{¶1}** The appellant, Bradley Dantz, appeals his conviction on one count of theft from a person in a protected class and the sentence imposed by the trial court. Appellee is the State of Ohio.

### STATEMENT OF THE FACTS AND THE CASE

**{¶2}** On January 10, 2024, the appellant was indicted in Stark County Common Pleas Court on one count of theft from a person in a protected class in violation of R.C. 2913.02(A)(1) and (B)(3), a felony of the fifth degree. The indictment alleged that on November 1, 2023, the appellant took "silver/coins" from victim C.B., an elderly person as defined by the statute, without C.B.'s consent. The appellant appeared for arraignment with appointed counsel on or about February 9, 2024, at which time he pleaded not guilty.

**{¶3}** The appellant's counsel filed a Request for Bill of Particulars and a Demand for Discovery on February 12, 2024. A pretrial, originally scheduled for February 20, 2024, was rescheduled a number of times. The matter was scheduled for trial on May 8, 2024.

**{¶4}** A pretrial proceeded on April 30, 2024, at which time a hearing was conducted on the appellee's plea offer; the appellee had offered to reduce the charge against the appellant from theft from a person in a protected class, a felony of the fifth degree, to theft, a misdemeanor of the first degree, if the appellant agreed to plead guilty to the amended charge and pay restitution in the amount of $260. The trial court confirmed the details of the offer on the record, and confirmed that the appellant's counsel had communicated the offer to the appellant. The appellant's counsel confirmed the appellee's offer, adding that it also included either 50 hours of community service or a $250 fine, as well as court costs. The court then addressed the appellant directly, ensuring that he

understood the offer and that his counsel had explained to him the consequences of a potential conviction on the charge of theft from a person in a protected class. In addition, the trial court explained the potential sentence the appellant faced if he was found guilty of the charge, asking him "do you understand that that is punishable by 6 to 12 months' incarceration" and it is "subject to a fine of not more than" $2,500. The appellant stated that he understood, and desired to go to trial.

{¶5} The matter proceeded to trial on May 8, 2024, on one count of theft from a person in a protected class, at which time the following evidence was presented to the jury.

{¶6} Victim C.B. lives in a home in North Lawrence, Ohio, next door to the appellant. C.B. was 65 years old at all times relevant to the proceedings. Despite being "retired," C.B. worked two days a week at a business he co-owns, and "does" flea markets two days a week. C.B. came to know witness B.H. through the flea market, as B.H. had purchased tools from C.B. at the flea market for several years. Occasionally, B.H. would purchase a large tool from C.B. that he did not have at the flea market, and B.H. would pick it up at C.B.'s home.

{¶7} On November 1, 2023, B.H. happened to be driving down the street on which C.B. lived. As he approached C.B.'s home, he observed that C.B.'s white van, which C.B. usually took to the flea market, was not there, but that C.B.'s other vehicle, a silver pickup truck, was parked in the driveway. B.H. was aware that C.B. took the silver pickup truck to auctions, and that it was generally full of items such as tools and antiques. B.H. realized that C.B. was not home because the white van was not there and, because

B.H. knew that C.B. lived alone, found it unusual that the driver's side door of C.B.'s truck was open and a man was standing at the door with his head inside the vehicle.

**{¶8}** B.H. observed the man "rummaging around" in C.B.'s truck, and suspected that he might be stealing C.B.'s property. B.H. turned his vehicle around and drove back to C.B.'s home, pulling in at the end of C.B.'s driveway and stopping his truck in the front yard, crossing the driveway. B.H. jumped out of his truck and yelled at the man to "stop." He observed that the man was wearing a black Carhart jacket and bibs, and had a clear view of the man's big, heavy, "greasy steel-toed work boots." Initially, B.H. could not see the man's face because the man had his hood up and his back towards B.H.

**{¶9}** B.H. told the man to not go anywhere, but the man started to walk away from B.H. and down the driveway; however, he paused and turned back around to face B.H. long enough to tell B.H. "to basically F off," giving B.H. a chance to see his face. B.H. testified that at that point, with the appellant no more than 20 to 30 feet away, he got a good look at the appellant's face. Based upon this observation, B.H. was able to positively identify the appellant as the man he saw in C.B.'s truck.

**{¶10}** B.H. testified that the appellant turned back around and continued down the driveway, heading towards the corner of the garage and a privacy fence. B.H., who is 6'4" tall, was able to "watch everything" and could "see overtop the fence." He could see a "clear path" where the appellant went through a gap in the privacy fence and entered the neighboring garage. B.H. was able to see the deck of the neighboring house, and watched the appellant run onto the deck and into the house.

**{¶11}** B.H. called the police, and called C.B. While B.H. stood outside waiting for the police, he saw the appellant come out of his garage and enter his house. The

appellant then came back out of the house, no longer wearing the black jacket and bibs, instead wearing different clothes. The appellant was, however, still wearing the same greasy work boots. The appellant approached B.H. and asked "if he could help" him, acting as though he was confused about what was going on. B.H. recognized that this was "absolutely" the same person he had seen in C.B.'s truck, and noted that, although the appellant had changed clothes, he was still wearing the same "greasy" work boots. B.H. told the appellant to "stay right there, wait until the police to get here, I have nothing to say to you." The appellant did not wait for police to arrive, and instead left the scene.

{¶12} C.B. arrived home approximately 10 minutes after B.H. called him, and the police arrived approximately 20 minutes after B.H. called them. Officer Madalyn Klemp of the Lawrence Township Police Department responded to the call of a suspicious person, and B.H. relayed what he had witnessed. He told Officer Klemp that the appellant had been wearing a black Carhart jacket and bibs with work boots when he ran from the truck, that he was no longer wearing the bibs or jacket when he came back out of the front door, but that he was still wearing the greasy work boots. The officer learned that the appellant had left the scene; she nevertheless made contact with a woman at the appellant's house, left her business card, and asked the woman to have the appellant contact her.

{¶13} C.B. looked inside his truck after Officer Klemp arrived on scene to determine if anything had been taken. Although he is a nonsmoker, he noticed the smell of cigarettes in his vehicle, and remarked that the appellant smokes cigarettes. C.B. also noticed that a five-ounce silver bar and a bag of 10-20 Indian Head pennies were missing from his truck. Based upon his experience buying such items from a dealer, C.B. estimated that the missing items were worth between $150 and $170. In addition, despite

the truck door having been open when B.H. arrived, it was locked when C.B. checked for missing items. There were no obvious signs of forced entry into the vehicle. C.B. testified that he had lost a set of keys outside somewhere between his home and the post office, and that the path from his home to the post office runs between his home and the appellant's home.

{¶14} Two days after the incident, the appellant contacted Officer Klemp by email. The appellant attempted to explain why he could not have been at C.B.'s house on the day and time of the theft, and attached four video clips to his email in support of his position. One video clip recorded the events just prior to the incident involving C.B.'s truck. In that video, the appellant is wearing greasy work boots and a black Carhart jacket and bibs. The next video clip begins at some point after B.H. parked in C.B.'s driveway, and shows B.H. talking on the phone while standing outside of his truck. Another video clip shows the front porch of the appellant's house, and actually corroborates B.H.'s description of the events. In addition, in this clip the appellant is no longer wearing the jacket and bibs; however, he had on the same work boots he was wearing in the first video clip. The video clips provided by the appellant depicted the time period before and after the incident; the appellant did not, however, provide a video clip for the time period of the incident itself. Officer Klemp testified that she found the video clips to be consistent with B.H.'s description of events. After reviewing the videos provided by the appellant, Officer Klemp concluded that the appellant had in fact committed theft, and charges were filed against him.

{¶15} The case was submitted to the jury for deliberations on May 9, 2024, and the jury returned a verdict of guilty the same day. The appellant waived his right to a pre-

sentence investigation. The trial court asked appellant's trial counsel if he wished to say anything prior to sentencing. The appellant's trial counsel stated that the appellant wanted the court to know that his wife was "pretty sick," that he "is the only one who has the car right now taking care of her," and requested that the appellant be able to return the car back home to his wife and "make sure someone is around to take care of her," after which he would report to the jail. The trial court proceeded to sentence the appellant to the following: community control for a period of three years, with an order to successfully complete intensive supervised probation; a term of six months in the Stark County Jail, which the appellant was to begin immediately; 100 hours of community service at the rate of 10 hours per week; obtain and maintain full-time verifiable employment, have an assessment for any drug or alcohol problems, and complete treatment recommendations, if any; pay restitution to C.B. in the amount of $170; and, pay court costs. In addition, the appellant was ordered to have no contact, directly or indirectly, with the victim, C.B.

{¶16} The trial court asked the appellant, "And do you have any questions about the terms and conditions of your probation, sir?" The appellant responded that he was "not even soaking all this in right now." The trial court repeated the sentence it had imposed, and asked the appellant a second time: "Do you have any questions about the terms and conditions of your probation, sir?" The appellant responded "No, ma'am." Neither the appellant nor his attorney objected to the sentence imposed by the trial court. On May 15, 2024, the trial court filed a Judgment Entry confirming the jury's finding of guilt and the court's imposition of sentence.

{¶17} The appellant filed a timely appeal, and sets forth the following three assignments of error:

**{¶18}** "I. THE STATE FAILED TO PRESENT SUFFICIENT EVIDENCE TO SUSTAIN A CONVICTION AGAINST APPELLANT, AND THE CONVICTION MUST BE REVERSED."

**{¶19}** "II. THE APPELLANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF EVIDENCE AND MUST BE REVERSED."

**{¶20}** "III. APPELLANT'S SENTENCE SHOULD BE REVERSED AS CONTRARY TO LAW BECAUSE THE RECORD DEMONSTRATES THAT THE TRIAL COURT'S SENTENCE WAS VINDICTIVE AS APPELLANT WAS SENTENCED MORE HARSHLY FOR EXERCISING HIS RIGHT TO TRIAL."

## ASSIGNMENTS OF ERROR I AND II

**{¶21}** The appellant argues in assignments of error numbers one and two that the decision of the trial court was not supported by sufficient evidence and was against the manifest weight of the evidence. We disagree.

## Standard Of Review

**{¶22}** Sufficiency of the evidence was addressed by the Ohio Supreme Court in *State v. Worley,* 2021-Ohio-2207:

> The test for sufficiency of the evidence is "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus, *superseded by constitutional amendment on other grounds as stated in State v. Smith*, 80 Ohio St.3d 89, 102, 684 N.E.2d 668 (1997), fn. 4, and following *Jackson v. Virginia*, 443

U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). " 'Proof beyond a reasonable doubt' is proof of such character that an ordinary person would be willing to rely and act upon it in the most important of the person's own affairs." R.C. 2901.05(E). A sufficiency-of-the-evidence challenge asks whether the evidence adduced at trial "is legally sufficient to support the jury verdict as a matter of law." *State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-4215, 954 N.E.2d 596, ¶ 219.

*Id.* at ¶57. Thus, a review of the constitutional sufficiency of evidence to support a criminal conviction requires a court of appeals to determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

{¶23} Manifest weight of the evidence, on the other hand, addresses the evidence's effect of inducing belief. *State v. Thompkins,* 78 Ohio St.3d 380, 386–387, (1997), *superseded by constitutional amendment on other grounds as stated by State v. Smith,* 1997-Ohio-355. The Court stated:

. . . Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its *effect in inducing belief.*" (Emphasis added.) Black's, *supra,* at 1594.

*Id.* at 387. The Court stated further:

> When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a " 'thirteenth juror' " and disagrees with the factfinder's resolution of the conflicting testimony. *Tibbs,* 457 U.S. at 42, 102 S.Ct. at 2218, 72 L.Ed.2d at 661. See, also, *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 219, 485 N.E.2d 717, 720–721 ("The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.").

*Id.*

**{¶24}** In addition, as set forth by the Ohio Supreme Court in the seminal case of *Seasons Coal Co., Inc. v. Cleveland,* 10 Ohio St.3d 77 (1978), it is also important that, when evaluating whether a verdict is supported by a manifest weight of the evidence, "a court of appeals be guided by a presumption that the findings of the trier-of-fact were indeed correct." *Id.* at 80. The Court stated further:

> "* * * [I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every

reasonable presumption must be made in favor of the judgment and the finding of facts. * * *

"If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment."

*Id.* at fn. 3, quoting 5 Ohio Jurisprudence 3d (1978) 191-192, Appellate Review, Section 603.

## Analysis

**{¶25}** The appellee presented the testimony of witness B.H., who gave detailed testimony regarding the events of November 1, 2023. He identified the appellant as the man he saw rummaging through the victim's vehicle, leave the scene, go into the house next door, come back outside, ask if he could help while wearing the same greasy work boots, and then leave the scene. The appellee also presented the testimony of victim C.B., as well as that of Officer Klemp, who investigated the matter. The jury was in the best position to ascertain the credibility of the witnesses and evaluate the evidence presented. Based upon the evidence presented, the jury found that the appellant was guilty of theft from a protected person. We find that the evidence adduced at trial "is legally sufficient to support the jury verdict as a matter of law," and that any rational trier of fact could have found the essential elements of the theft from a person in a protected class beyond a reasonable doubt. Furthermore, there is no evidence that the jury lost its way resulting in a manifest miscarriage of justice. Accordingly, we find appellant's assignments of error numbers one and two to be without merit.

**ASSIGNMENT OF ERROR III**

{¶26}  The appellant argues in assignment of error number three that his sentence was contrary to law because the trial court was vindictive and sentenced him more harshly because he exercised his right to trial. We disagree.

**Standard Of Review**

{¶27}  Generally, felony sentences are reviewed under R.C. 2953.08(G)(2). *State v. Goings*, 2014-Ohio-2322, ¶ 20 (6th Dist.). An appellate court may increase, modify, or vacate and remand a judgment only if it clearly and convincingly finds either "(a) the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant" or "(b) the sentence is otherwise contrary to law." *State v. Yeager*, 2016-Ohio-4759, ¶ 7 (6th Dist.), citing R.C. 2953.08(G)(2).

{¶28}  However, as discussed by this Court recently in *State v. Bright*, 2025-Ohio-725 (5th Dist.), the appellant's failure to object to his sentence while before the trial court "leaves him with little recourse." *Id.* at ¶6. The *Bright* Court stated:

> Bright did not, however, object to the community-control conditions that were imposed at her sentencing hearing. An error "that was not called to the attention of the trial court at a time when the error could have been avoided or corrected by the trial court" is deemed forfeited absent plain error. *State v. Haudenschild*, 2024-Ohio-407, ¶ 15 (5th Dist.). *See also* Crim.R. 52(B) and *State v. Whitaker*, 2022-Ohio-2840, ¶ 166 ("because

Whitaker failed to object to the imposition of consecutive sentences at the sentencing hearing, he has forfeited this issue, absent plain error").

To be sure, had the trial judge announced the sentence and then abruptly left the courtroom without giving the parties a chance to raise objections to the judge's ruling, Bright could not be faulted now for having stayed silent then. *See, e.g., United States v. Ralston*, 110 F.4th 909, 919 (6th Cir. 2024) (noting that federal district courts "are required to ask the parties during the sentencing hearing whether they have any objections to the sentence that has been imposed"); *U.S. v. Bostic*, 371 F.3d 865, 872 (6th Cir. 2004) (where a trial court fails to provide the parties with an opportunity to object to the sentence, the parties "will not have forfeited their objections and thus will not be required to demonstrate plain error on appeal[ ]").

Here, the trial judge — by asking the parties, after the sentence was announced, if they had "[a]nything further" to say — gave Bright a meaningful opportunity to express the concerns that Bright now raises here. Neither Bright's trial counsel nor Bright herself objected to the sentence. We, therefore, review Bright's community-control sentence for plain error.

*Id.* at ¶7-9. In the case sub judice, the appellant failed to object to the sentence imposed by the trial court at the time of sentencing, even when the court asked him, twice, if he had any questions about his sentence. The appellant had a meaningful opportunity to address his sentence at that time, and failed to do so. As such, we review for plain error only.

**Analysis**

**{¶29}** The Court's decision in *Bright* concisely addressed plain error:

To constitute plain error, an error "must be on the record, palpable, and fundamental, so that it should have been apparent to the trial court without objection." *State v. Dunlap*, 2004-Ohio-6652, ¶ 34 (8th Dist.). "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus.

Under Ohio law, a sentencing court in a felony case "may directly impose a sentence that consists of one or more community control sanctions[.]" R.C. 2929.15(A)(1). As part of those sanctions, a trial court "may impose any other conditions of release under a community control sanction that the court considers appropriate[.]" *Id.* Sentencing courts "thus [have] broad discretion ... in imposing community-control sanctions." *State v. Talty*, 2004-Ohio-4888, ¶ 10. Sanctions available to a sentencing court include "[a] term of drug and alcohol use monitoring[.]" R.C. 2929.17(H).

*Id.* at ¶¶ 10-11. The appellant was sentenced in conformity with statutory guidelines. The court has broad discretion in this regard, and did not commit plain error when it sentenced the appellant. Therefore, we find the appellant's third assignment of error to be without merit.

## CONCLUSION

{¶30} Based upon the foregoing, the appellant's assignments of error numbers one, two, and three are overruled, and the decision of the Stark County Court of Common Pleas is hereby affirmed.

By: Baldwin, P.J.

Montgomery, J. and

Gormley, J. concur.