[Cite as *State v. Miller*, 2025-Ohio-4387.]

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO, | Case No. 2025 AP 01 0004 |
| Plaintiff - Appellee | <u>Opinion & Judgment Entry</u> |
| -vs- | Appeal from the Court of Common Pleas of Tuscarawas County, Case No. 2023 CR 03 0100 |
| NATHAN W. MILLER, | |
| Defendant - Appellant | Judgment: Affirmed |
| | Date of Judgment: September 18, 2025 |

BEFORE: Craig R. Baldwin; Robert G. Montgomery; David M. Gormley, Judges

APPEARANCES: Kristine W. Beard, for Plaintiff-Appellee; Nicole R. Stephan, for Defendant-Appellant.

*Gormley, J.*

{¶1}　Defendant Nathan Miller challenges the 24-month prison term that he received for violating the conditions of his community-control sentence.  Miller argues that his conduct while he was under supervision constituted nothing more than what is described in R.C. 2929.15(E) as a "technical" violation of community control, and he then points to R.C. 2929.15(B)(1)(c)(ii) as support for his view that any prison sentence imposed for his violation was capped at 180 days.  For the reasons explained below, we disagree with Miller's stance, and we now affirm the judgment of the trial court.

**<u>The Key Facts</u>**

{¶2}　Miller pled guilty to one fourth-degree-felony charge of failure to comply with an order or signal of a police officer, one fourth-degree-felony charge of grand theft of a

motor vehicle, and one first-degree-misdemeanor theft charge. Miller was placed on community control for a period of five years. At Miller's initial sentencing hearing, the judge notified Miller that if he — Miller — violated the terms and conditions of his community control, the judge could impose a prison sentence of up to 18 months on each of the two felony charges as well as up to 180 jail days on the misdemeanor charge. The trial judge also informed Miller that any prison terms for the two felonies would — in light of R.C. 2921.331(D) — be imposed consecutively to one another.

{¶3} The parties acknowledged at the initial sentencing hearing that Miller had a history of substance abuse that contributed to his pattern of criminal conduct. To aid Miller in staying sober, his community-control conditions required him — among other things — to refrain from possessing or using any illegal drugs, and he was subject to random drug screens to ensure his compliance. Another term of his community-control sentence prohibited him from possessing or using any device or thing designed to alter the results of a drug screen.

{¶4} While he was under supervision in the case, Miller violated both the drug-use condition and the ban on the use of test-altering items. On one occasion when he was ordered to take a random drug test, Miller was caught attempting to use a device containing fake urine, and he admitted to the test administrator that his own urine would test positive for methamphetamine that day. Miller had some methamphetamine in his pocket then too.

{¶5} At a hearing in front of the trial judge soon thereafter, Miller admitted that he had violated the conditions of his community-control sentence. The judge terminated Miller's community-control period and imposed an 18-month prison term on the F4 failure-

to-comply charge, a consecutive six-month prison term on the F4 grand-theft charge, and a concurrent 180-day jail sentence on the M1 theft charge, meaning of course that Miller's aggregate prison term was 24 months. Because Tuscarawas County participates in the Targeted Community Alternatives to Prison (TCAP) program, Miller was ordered to serve his entire term of incarceration in the local jail in Tuscarawas County. Miller now appeals his sentence.

**We Review the Sentence Under the Plain-Error Standard**

{¶6} In his sole assignment of error, Miller challenges the 24-month prison term that he received for violating the conditions of his community-control sentence. Any prison term lasting longer than a few months was contrary to law, he argues, because in his view he committed a mere "technical" violation of his community-control sentence, and any prison term imposed for the violation was therefore capped, he says, at 180 days under R.C. 2929.15(B)(1)(c)(ii).

{¶7} Miller did not, however, object to his sentence at the conclusion of his violation hearing, and he did not call to the trial judge's attention the alleged legal errors that he now asks us to correct. "An error 'that was not called to the attention of the trial court at a time when the error could have been avoided or corrected by the trial court' is deemed forfeited absent plain error." *State v. Bright*, 2025-Ohio-725, ¶ 7 (5th Dist.), citing *State v. Haudenschild*, 2024-Ohio-407, ¶ 15 (5th Dist.); *see also* Crim.R. 52(B).

{¶8} Here, the trial judge — after announcing Miller's prison sentence at the violation hearing — asked both parties if either of them had "any questions" about the sentence. Neither Miller himself nor his trial counsel objected to the length of the prison

term that the judge had just imposed. We therefore review Miller's sentence solely for plain error.

**Miller's Sentence Was Not Contrary to Law**

{¶9} To rise to the level of plain error, "an error 'must be on the record, palpable, and fundamental, so that it should have been apparent to the trial court without objection.'" *Bright* at ¶ 10, quoting *State v. Dunlap*, 2004-Ohio-6652, ¶ 34 (8th Dist.). "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus.

{¶10} R.C. 2929.15(B)(1) outlines the penalties that are available to a sentencing court when a defendant has violated one or more conditions of community control. That statutory provision tells us, in relevant part, that the trial court may impose "a prison term" under R.C. 2929.14 and R.C. 2929.15(B)(3), subject to certain limitations that may shorten the permissible length of any prison term imposed for a "technical" violation. R.C. 2929.15(B)(1)(c)(i) and (ii).

{¶11} Generally, a prison term that is imposed for a technical violation of community control for a felony of the fourth degree that is not an offense of violence or a sexually oriented offense may not exceed 180 days. R.C. 2929.15(B)(1)(c)(ii). Miller's argument that his prison sentence unlawfully exceeded that cap, therefore, turns on whether he committed a mere technical violation while he was under supervision.

*Miller's Violation Was Not a Technical One*

{¶12} For a person like Miller, who was under community supervision for nonviolent F4 crimes that were not sex offenses, the term "technical violation" means a

community-control violation to which neither of the following applies: (1) the violation involved the commission of "a new criminal offense" other than a minor misdemeanor, or (2) the violation reflected an "articulated or demonstrated refusal" to comply with the trial court's community-control sentence, and that refusal "demonstrates to the court that the offender has abandoned the objects" of that sentence. R.C. 2929.15(E)(1) and (2).

{¶13} Our court has previously explained that a defendant who uses illegal drugs or who refuses to comply with drug-testing requirements while under supervision has committed something more than a mere technical violation, and a trial court is then not constrained by the 90-day and 180-day caps on prison terms in R.C. 2929.15(B)(1)(c). *See State v. Brauchler*, 2024-Ohio-2994, ¶ 32-34 (5th Dist.) (a defendant's refusal to participate in drug screening, and that person's attempt to dilute a drug test with water, were "consistent with a demonstrated and articulable refusal to participate in the community control conditions imposed by the judge"); *State v. Johnson*, 2019-Ohio-376, ¶ 14-15 (5th Dist.) ("Appellant's use of methamphetamine . . . constituted a felony offense rather than a technical offense and the trial court was not required to cap her prison sentence").

{¶14} Under the terms of his community-control sentence, Miller was required to refrain from possessing or using illegal drugs, and he was also prohibited from possessing or using any device or thing designed to interfere with the results of a valid drug screen. Not only did Miller violate these conditions by attempting to adulterate a drug test with phony urine, but he was also using methamphetamine while under supervision, and he showed up for a drug test with some of that drug in his pocket.

**{¶15}** In light of these facts, we readily conclude that Miller's conduct while under supervision cannot rightly be described as a technical violation. His possession of methamphetamine could have led to the filing of a new felony charge against him, and his deceptive attempt to thwart the drug test could reasonably have been viewed by the trial judge as a demonstrated refusal to comply with the court's community-control conditions. Because Miller's conduct went beyond the statutory parameters of a technical violation, the 180-day cap in R.C. 2929.15(B)(1)(c)(ii) on the length of the permissible prison terms that he could receive for his two F4 offenses did not apply.

**{¶16}** In support of his contrary view here, Miller argues that we should consider his violations to be technical because the trial court never expressly stated that the violations were nontechnical and the prosecutor never filed any new criminal charges against him. Our court has previously held, though, that a defendant's admission to using methamphetamine — even when no new charges have been filed for that conduct — is enough to free a trial court from the technical-violation constraints that are spelled out in R.C. 2929.15(B)(1)(c). *State v. Johnson*, 2019-Ohio-376, ¶ 14-15 (5th Dist.).

**{¶17}** Here, Miller admitted at his violation hearing that he had not complied with his community-control sentence, and the trial judge noted that Miller's conduct was, in the judge's words, a "complete disregard of the purposes" of community control. Miller's conduct and the judge's description of it indicate that this was not a technical-violation situation, and neither the absence of a new drug-possession charge nor the trial judge's failure to say more alters our conclusion.

*Miller's Sentence Was a Permissible One*

**{¶18}** Unconstrained by the technical-violation limits in R.C. 2929.15(B)(1)(c), the trial judge, in addressing Miller's community-control violations, was free to impose on him the kind of consequences spelled out in R.C. 2929.15(B)(1): either some additional community-control conditions or instead some prison terms. (The one other consequence listed in that statute — lengthening a defendant's supervision period — was not an option in this case because Miller's supervision period was set at the R.C. 2929.15(A)(1) five-year maximum length right from the start.)

**{¶19}** And in setting the length of any prison terms for Miller's two F4 offenses, the trial judge at the violation hearing rightly looked to R.C. 2929.14(A)(4), which is of course the statutory provision that tells us how long any F4 prison term can be.

**{¶20}** To be sure, Miller, according to R.C. 2929.19(B)(4), must have received notice at his initial sentencing hearing that a violation of his community-control sentence could lead to the imposition of F4 prison terms on him. He is not claiming, though, that that requirement was overlooked by the trial judge when the community-control sentence was imposed on him at the initial sentencing hearing.

**{¶21}** Instead, Miller appears to suggest that he should have been permitted to serve his violation-hearing prison terms in a state prison rather than in the local jail. In a TCAP county like Tuscarawas County, though, a trial judge's hands are tied. Under R.C. 2929.34(B)(3)(c), "no person" who is sentenced in a TCAP county to a prison term for a nonviolent F4 or F5 that is not a sex offense can serve that prison term in a state prison. (Some exceptions to that no-person provision are spelled out in R.C. 2929.34(B)(3)(d), but those exceptions do not apply to Miller.)

**{¶22}** Even had the trial judge wanted to accommodate Miller's apparent preference that the prison terms be served in a state prison, the judge could not do so. Certainly nothing in Ohio law required the trial judge to impose prison terms when Miller violated some conditions of the initial community-control sentence. Any prison terms that the judge chose to impose, though, had to be served in a local jail rather than in a state prison.

**{¶23}** Because the sentence imposed on Miller at his violation hearing comported with Ohio law in a TCAP county, we see nothing here that can rightly be described as plain error. We therefore affirm the trial court's judgment.

**{¶24}** Any costs must be paid by Appellant Nathan Miller.

By: Gormley, J;

Baldwin, P.J. and

Mongtomery, J. concur.